**BERYL BERTRAND, as Administrator of the Estate of Jacques-Pierre Bertrand, Appellant/Plaintiff**

**v.**

**MYSTIC GRANITE AND MARBLE, INC.; ABACO MACHINES USA, INC.; the GOVERNMENT OF THE VIRGIN ISLANDS, COMMISSIONER CATHERINE HENDRY, acting in her capacity as the Commissioner of the U.S. Virgin Islands Department of Labor; and COMMISSIONER VALDAMIER O. COLLENS, acting in his capacity as the Commissioner of the U.S. Virgin Islands Department of Finance,[1] Appellees/Defendants**

S. Ct. Civil No. 2013-0130

Supreme Court of the Virgin Islands

October 27, 2015

---

[1] Although this action was originally brought against Albert Bryan as the Commissioner of the Virgin Islands Department of Labor and Angel E. Dawson as the Commissioner of the Virgin Islands Department of Finance, Bryan and Dawson are no longer in office. Accordingly, they were automatically substituted with their successors in office pursuant to Supreme Court Rule 34(c).

772

PAUL M. PLATTE, ESQ., Rogers Townsend & Thomas, P.C., Columbia, SC; DAVID A. BORNN, ESQ., The Bornn Firm, P.L.L.C., St. Thomas, USVI, *Attorney for Appellant.*

ROBERT J. KUCZYNSKI, ESQ., CARL A. BECKSTEDT, III, ESQ., Beckstedt & Associates, St. Croix, USVI, *Attorney for Appellee Mystic Granite and Marble, Inc.*

MICHAEL E. FITZSIMMONS, ESQ., Duensing, Casner & Fitzsimmons, St. Thomas, USVI, *Attorney for Appellee Abaco Machines USA, Inc.*

PAMELA R. TEPPER, ESQ., Assistant Attorney General, St. Thomas, USVI, *Attorney for Appellee Government of the Virgin Islands*.

CABRET, *Associate Justice*; SWAN, *Associate Justice*; and HODGE, *Designated Justice*.[2]

## OPINION OF THE COURT

(October 27, 2015)

CABRET, *Associate Justice*. The estate of Jacques-Pierre Bertrand appeals the Superior Court's grant of summary judgment in the estate's wrongful-death action against Mystic Granite and Marble, Inc., and Abaco Machines USA, Inc. The estate also appeals the Superior Court's order holding that part of the settlement the estate reached with Island Tile and Marble, LLC, and its president Michael Cordiner, be used to reimburse the Government Insurance Fund for medical and funeral payments to Bertrand and his family. For the reasons that follow, we reverse the Superior Court's grant of summary judgment to Mystic and Abaco, reverse the Superior Court's order directing that part of the settlement be paid to the Government, and remand for further proceedings.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 17, 2008, while Jacques-Pierre Bertrand was attempting to unload two slabs from a shipping container for his employer on St. Thomas, the slabs fell on him. *Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 603 (V.I. 2012). Each slab was composed of either granite or marble,[3] weighed around 800 pounds, and stood ten feet tall by five feet wide. Bertrand died from his injuries 12 days later. *Id.* at 603-04. Bertrand's mother, in her capacity as administrator of his estate, *see* 5 V.I.C. §§ 76-77, then brought this wrongful-death and survival action against Island Tile, Bertrand's employer; Michael Cordiner, Island Tile's president; Mystic, a wholesaler of tile and stone that packaged the slabs

---

[2] Chief Justice Rhys S. Hodge is recused from this matter. The Honorable Verne A. Hodge, Chief Judge Emeritus of the Superior Court of the Virgin Islands, sits in his place by designation pursuant to 4 V.I.C. § 24(a).

[3] It is unclear from the record whether the slabs were granite or marble, but that has no impact on this appeal.

for shipping from Florida to St. Thomas; and Abaco, the manufacturer of the clamp that was used to move the slabs. *Id.* at 604.

In the complaint, the estate alleged that these parties' negligence contributed to Bertrand's death, and brought additional claims against Abaco for breach of express and implied warranties and strict products liability due to the alleged failure of its clamp. After taking discovery, Abaco moved for summary judgment on September 27, 2013, arguing that there was no evidence that its clamp was in use when the slabs fell on Bertrand. Mystic followed suit, moving for summary judgment on October 4, 2013, arguing that there was no evidence that Mystic's employees negligently loaded the slabs into the shipping container in Florida. Mystic alternatively argued that, even if there was evidence of negligence, Bertrand's attempt to move slabs on his own was the "superseding cause" of his death.

The estate opposed both motions, arguing that there was a genuine issue of material fact regarding whether Abaco's clamp was in use at the time of accident. The estate supported this contention with deposition testimony indicating that immediately after the accident, Cordiner told Bertrand's family and co-workers that the clamp had "failed." In opposing Mystic's motion, the estate claimed that there was evidence creating genuine issues of material fact regarding the actions of Mystic's employees during the loading process, including evidence that Mystic's employees, using Mystic's crane, loaded the slabs in bundles into the shipping container in a dangerously vertical position. The estate also submitted the affidavit and accompanying expert report of Frederick M. Hueston, Ph.D., an expert with "extensive experience in safety in loading, unloading and packing stone slabs," who concluded that Mystic used inadequate safety procedures while loading the slabs.

On October 29, 2013, the estate informed the Superior Court that it reached a settlement with Cordiner and Island Tile. Two days later, the Superior Court granted summary judgment to both Abaco and Mystic on all claims in an October 31, 2013 order, and explained in a November 15, 2013 opinion that there were no genuine issues of material fact for a jury to determine, making summary judgment appropriate. *Bertrand v. Cordiner Enters., Inc.*, Super. Ct. Civ. No. 457/2008 (STT), 2013 V.I. LEXIS 67 (V.I. Super. Ct. Nov. 15, 2013) (unpublished).

While the motions for summary judgment were pending, the Government of the Virgin Islands moved for the Superior Court to take

judicial notice of a lien against the estate totaling $204,014 for medical and funeral expenses paid by the Government to Bertrand and his family immediately after the accident. And once it learned of the settlement, the Government moved to enforce its lien, requesting that the Superior Court direct the settling parties to deposit the settlement funds with the court. The estate opposed this motion on November 4, 2013, arguing that the Government could not recover its lien from the settlement proceeds because the Government failed to comply with the subrogation provisions of the workers' compensation statute. *See* 24 V.I.C. § 263.

The Superior Court granted the Government's motion in a November 15, 2013 order, and directed the settling parties to allocate a portion of the settlement proceeds to the Government Insurance Fund for the full amount of the Government's lien. The estate filed a timely notice of appeal with this Court on November 21, 2013, appealing both the order granting summary judgment to Mystic and Abaco, and the order granting the Government a portion of the settlement proceeds. *See* V.I.S.CT.R. 5(a)(1).

## II. JURISDICTION

"The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The Superior Court's October 31, 2013 order granting summary judgment to Mystic and Abaco was a final order within the meaning of section 32, since it disposed of all pending claims between the parties. *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014). And because "[u]pon an appeal from a judgment or an order," this Court may review "each interlocutory judgment or intermediate or other order that it is authorized to review," our jurisdiction extends to consideration of the Superior Court's November 15, 2013 order holding that the Government can recover its lien against the settlement proceeds. 4 V.I.C. § 32(c); *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 685 (V.I. 2015).

## III. DISCUSSION

On appeal, the estate argues that the Superior Court erred in granting summary judgment to Mystic because there was evidence that Mystic loaded the slabs at an unsafe, vertical angle, creating a genuine issue of material fact regarding its liability for Bertrand's death. The estate also

argues that the Superior Court should not have granted summary judgment to Abaco because there was evidence that the clamp was in use at the time of the accident. Lastly, the estate challenges the Superior Court's November 15, 2013 order, renewing its argument that the Government is not entitled to reimbursement from the settlement funds because it did not comply with the workers' compensation statute.

## A. Summary Judgment

We apply plenary review to the Superior Court's grant of summary judgment. *Machado*, 61 V.I. at 379 (quoting *Perez v. Ritz-Carlton (V.I.), Inc.*, 59 V.I. 522, 527 (V.I. 2013)). "In conducting this review, we apply the same test as the Superior Court and view all inferences from the evidence in the light most favorable to . . . the nonmoving party, and take [its] allegations as true if properly supported." *Id.* We may not weigh the evidence or determine the credibility of witnesses, and instead view all inferences from the evidence in the light most favorable to the estate as the nonmoving party, construing any conflicting allegations in the estate's favor if properly supported. *Id.* "Summary judgment is a drastic remedy, and should be granted only when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact" that must be decided by a jury. *Id.* at 379-80 (quoting *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008)) (alteration omitted). To determine whether the Superior Court's grant of summary judgment was proper, we analyze the court's decision in the context of the substantive law governing the cause of action. *Machado*, 61 V.I. at 380 (citing *Perez*, 59 V.I. at 528). Accordingly, to the extent raised at summary judgment, we examine each of the estate's claims against Mystic and Abaco in turn. *Id.*

### 1. *The estate's claims against Mystic*

The estate's complaint alleges that Mystic was negligent in packaging the slabs for shipping from Florida to St. Thomas. In order to determine whether the estate submitted sufficient evidence of negligence to survive summary judgment, this Court would typically be required to determine whether there is evidence that Mystic had "a legal duty of care" to Bertrand, and also whether Mystic "breach[ed] that duty of care," which "constitut[ed] the factual and legal cause of" Bertrand's death. *Machado*, 61 V.I. at 380 (adopting the basic elements of negligence after conducting

the analysis required by *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011)).

But the only issue raised by Mystic in its motion for summary judgment was the argument that the estate failed to provide sufficient evidence to create a genuine issue of material fact on the element of causation, insisting that there was no evidence that any breach of duty by Mystic caused Bertrand's death. Accordingly, the only issue properly before this Court is whether the Superior Court erred in finding that the estate failed to submit sufficient evidence to create a genuine issue of material fact regarding causation. *Id.*

In granting Mystic's motion for summary judgment, the Superior Court agreed with Mystic's argument, determining that the estate's evidence failed to create an issue of fact regarding whether Mystic's actions were the proximate cause of Bertrand's death. 2013 V.I. LEXIS 67, at *9. While the Superior Court agreed that the undisputed facts showed that Mystic operated the crane that placed the slabs in the shipping container, the court ultimately concluded that this fact was "irrelevant" because the accident occurred only after the wood framing and ratchet straps holding the slabs in place were removed. *Id.* In addition, the Superior Court concluded that Bertrand's attempt to move the slab on his own without additional assistance was the "superseding cause" of his injuries, even if Mystic was otherwise negligent in loading the slabs. *Id.* at *7.

While the Superior Court is correct that the evidence shows that the accident only occurred after the wood frames and ratchet straps were removed from the slabs, the Superior Court also noted that the "undisputed facts" show that Mystic "operat[ed] the crane that placed the slabs in the shipping container in Florida." *Id.* at *8. Further, the estate presented evidence suggesting that Mystic placed the slabs that fell on Bertrand in the shipping container in an unsafe, vertical position. In particular, Bertrand's twin brother and fellow co-worker, Jean-Philippe Bertrand, stated in his deposition that "the granite was sitting . . . close to like 80 degrees" and that the slabs "[n]ormally . . . lean[] more against the wall instead of standing straight up." In his opinion, the slabs were "definitely more straight than normal." In addition, the estate presented an expert report stating that Mystic failed to exercise reasonable care in loading the slabs because "the last two slabs were [placed in the shipping container] in a dangerously vertical position." This conclusion was based on the evidence provided and "generally-accepted principles of safety

779

which are commonly applied in the dimensional stone industry." Mystic provided no evidence contradicting the allegations regarding the angle of the two slabs, and even conceded that there was no evidence that the slabs shifted, moved, or otherwise changed position during shipping.

■ This evidence that Mystic loaded the slabs into the shipping container at an unsafe angle, combined with Mystic's concession that the angle of the slabs was not disturbed before Bertrand began unloading them — either during shipping or during the process of removing the wood framing — created a genuine issue of material fact as to whether Mystic was negligent in loading the slabs into the shipping container.

In granting summary judgment, the Superior Court also agreed with Mystic's argument that Bertrand's attempt to move the 800-pound slab by himself was a "superseding cause" of his own death, cutting off Mystic's liability regardless of any negligence on its part. *Id.* at *7. This conclusion requires little comment, as it directly conflicts with 5 V.I.C. § 1451(a), the Territory's comparative negligence statute. Section 1451(a) specifically provides that "the contributory negligence of the plaintiff shall not bar a recovery, but the damages shall be diminished by the trier of fact in proportion to the amount of negligence attributable to the plaintiff." Mystic's assertion that Bertrand's own actions caused his death falls squarely within this statute, and thus any issue regarding whether Bertrand's actions contributed to his death is necessarily a question of fact that must be determined by the finder of fact at trial.[4] *Machado*, 61 V.I.

---

[4] Even in the absence of section 1451(a), we must note that as traditionally understood, superseding cause is a doctrine that applies to the actions of a third party, aside from the actions of the plaintiff and defendant, that is often invoked by a defendant to argue that the third party's actions were the actual cause of the plaintiff's injury. *See Von der Heide v. Com., Dept. of Transp.*, 553 Pa. 120, 718 A.2d 286, 289 (1998); *Duphily v. Delaware Elec. Co-op., Inc.*, 662 A.2d 821, 829 (Del. 1995) (a superseding cause is a "new and independent act" not including the plaintiff's own negligence); *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299, 304 (1997) (an intervening cause is a "new, independent force intervening between the defendant's negligent act and the plaintiff's injury by the negligence of a third person"). Significantly, courts have held that "the rationale for the doctrine of superseding cause has been substantially diminished by the adoption of comparative negligence." *Com., Transp. Cabinet, Dept. of Highways v. Babbitt*, 172 S.W.3d 786, 793 (Ky. 2005); *see also Hercules, Inc. v. Stevens Shipping Co.*, 765 F.2d 1069, 1075 (11th Cir. 1985); *Roggow v. Mineral Processing Corp., Needmore Processing Div.*, 698 F. Supp. 1441, 1445 (S.D. Ind. 1988); *Sumpter v. City of Moulton*, 519 N.W.2d 427, 432 (Iowa Ct. App. 1994); *Torres v. El Paso Elec. Co.*, 1999-NMSC 029, 127 N.M. 729, 987 P.2d 386, 394 (1999); *Harris v. Utah Transit Authority*,

at 397-98. Therefore, the Superior Court erred in granting summary judgment on the estate's negligence claim against Mystic, and we reverse.

### 2. *The estate's claims against Abaco*

In its complaint, the estate alleged that Abaco was liable for negligence, breach of implied and express warranty,·and strict liability for the "defective condition" of the clamp. The only argument Abaco made in moving for summary judgment on all of these claims was that there was no evidence that its clamp was in use at the time of the accident, and therefore it could not have been the cause of Bertrand's death. The Superior Court agreed, dismissing all of the estate's claims against Abaco on summary judgment after holding that there was no evidence to support a finding that the clamp caused Bertrand's death.

As Abaco pointed out in its motion for summary judgment, some of the deposition testimony suggests that the clamp was not touching the slabs at the time of the accident. This is supported by the testimony of Cordiner, who stated that the clamp was approximately "[a] foot above the slab" when the slabs fell on Bertrand. Martin De La Rosa, an Island Tile employee and the only other eyewitness to the accident, also testified that the clamp never touched the slabs that ultimately fell on Bertrand. No other witness testified to the location of the clamp in relation to the slabs that fell. But the estate cites the testimony of Ekron Farrell, an Island Tile employee working the day of the accident, who stated that he heard Cordiner saying that he did not "know why the clamp didn't hold." In addition, the estate cites the testimony of Bertrand's brother, who stated that Cordiner approached him at the hospital and said that he "[didn't] understand why the clamp didn't hold." Similar testimony was also provided by Bertrand's father, who remembers Cordiner saying that "the clamp failed." At his deposition, Cordiner denied making these statements.

■ On appeal, Abaco argues that the statements of Farrell and Bertrand's brother and father cannot create a genuine issue of material fact regarding causation because they are inadmissible hearsay. *See Arlington Funding Services, Inc. v. Geigel*, 51 V.I. 118, 132 n.9 (V.I.

671 P.2d 217, 222 (Utah 1983). Because Bertrand's actions cannot be characterized as a superseding cause of his own death, we do not need to resolve this issue here.

781

2009) ("As a general rule, inadmissible hearsay may not be used to support or defeat a motion for summary judgment."), *abrogated on other grounds by Benjamin v. AIG Ins. Co. of P.R.*, 56 V.I. 558, 564 (V.I. 2012). Yet, despite making several references in its motion for summary judgment to the fact that only admissible evidence should be considered at summary judgment, Abaco never argued that these statements were inadmissible hearsay in its motion for summary judgment or in its reply to the estate's opposition to that motion.

In order to preserve an issue for appeal under Supreme Court Rule 4(h), "a party [must] raise an issue in time for the Superior Court to address it and take whatever action is necessary in the first instance." *Percival v. People*, 62 V.I. 477, 486 (V.I. 2015) (citing *Davis v. Varlack Ventures, Inc.*, 59 V.I. 229, 233 n.1 (V.I. 2013)). Even under this very lenient standard, simply stating a principle of law without any argument or explanation of how it applies to the case at hand is not sufficient to fairly present the issue to the Superior Court. *Yusuf v. Hamed*, 59 V.I. 841, 851 n.5 (V.I. 2013) (to preserve an issue for appeal, a party must raise that specific issue before the Superior Court, "and a general objection or an objection on other grounds will not suffice"). The estate even specifically relied on the statements of Farrell and Bertrand's brother and father in opposing Abaco's motion for summary judgment, yet in Abaco's reply, it still did not argue that these statements were inadmissible hearsay. Therefore, because Abaco failed to fairly present this issue to the Superior Court at summary judgment, it is waived on appeal. V.I.S.CT.R. 4(h); *Perez*, 59 V.I. at 528 (issues not raised in a summary-judgment motion are waived on appeal from a grant of summary judgment). And viewing this evidence in the light most favorable to the estate, we have no trouble concluding that these statements indicating that the clamp failed were sufficient to create a genuine issue of material fact on the issue of causation. While Abaco pointed to testimony suggesting that the clamp was not in use when the slab fell, we must view the evidence in the light most favorable to the nonmoving party, and "may not weigh the evidence or determine the credibility of witnesses" in ruling on summary judgment. *Perez*, 59 V.I. at 522.

Accordingly, the Superior Court erred in holding that there was no evidence that Abaco's clamp caused Bertrand's death and erred in granting summary judgment to Abaco on that ground. Although the parties make several arguments on appeal going to other elements of the

estate's various claims against Abaco, the only issue raised in its motion was causation, and that was the only issue decided by the Superior Court in granting summary judgment in favor of Abaco. Therefore, Abaco has waived its arguments regarding the remaining elements of negligence, breach of implied and express warranty, and product defect,[5] and we reverse the Superior Court's grant of summary judgment to Abaco.[6]

## B. Reimbursement to the Government Insurance Fund

■ Finally, the estate contends that the Superior Court erred when it ordered that a portion of the proceeds of its settlement with Island Tile and Cordiner be used to reimburse the Government for the full amount of its $204,014 lien against the estate. The Government responds that it is automatically entitled to reimbursement of these funds under 24 V.I.C. § 263.[7]

---

[5] We note that in discussing these causes of action, the Superior Court relied on former 1 V.I.C. § 4 to apply the Restatements of Law as "the binding law of the Territory." 2013 V.I. LEXIS 67, at *7. This, of course, was error. "[T]he Restatements no longer hold an automatic preferred status in Virgin Islands law, but as in all other jurisdictions, merely represent persuasive authority, just like law review commentaries and decisions rendered by courts outside of the Virgin Islands." *Gov't of the V.I. v. Connor*, 60 V.I. 597, 602 (V.I. 2014); *Brunn v. Dowdye*, 59 V.I. 899, 911 n.10 (V.I. 2013) ("[T]he Restatements no longer constitute the rules of decision in Virgin Islands courts."). Instead, this Court has explained that

> [a]s established in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011), and subsequent cases, when confronted with an issue of Virgin Islands common law that this Court has not resolved — or that has been addressed only through erroneous reliance on former 1 V.I.C. § 4 — courts must "engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands."

*Machado*, 61 V.I. at 380 (quoting *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014)). So to the extent that his Court has yet to conduct the appropriate analysis on the estate's causes of action, the Superior Court must do so in the first instance on remand.

[6] The estate also argues that it is entitled to punitive damages from both Mystic and Abaco. The estate made this same argument before the Superior Court, which correctly held that a request for punitive damages is not an independent cause of action. *Molloy v. Indep. Blue Cross*, 56 V.I. 155, 176 n.5 (V.I. 2012). Thus, consideration of punitive damages is not appropriate at summary judgment, and must only be determined if Mystic and Abaco are found liable for Bertrand's death.

[7] The Government also claims that the estate's arguments are now moot because the funds have already been paid to the Government. In making this argument, the Government cites no authority for this proposition aside from a ruling of the United States Supreme Court

The Government moved to enforce compliance with section 263 because the Government paid $204,014 out of the Government Insurance Fund to cover the costs of medical and funeral expenses incurred by Bertrand and his beneficiaries immediately after the accident. In ruling on the Government's motion, the Superior Court ordered the reimbursement from the settlement proceeds, holding that the plain language of section 263 required that the settlement proceeds be used to reimburse the Government.

■ "This Court applies plenary review to the Superior Court's construction of a statute." *In re L.O.F.*, 62 V.I. 655, 661 (V.I. 2015) (citing *In re Reynolds*, 60 V.I. 330, 333 (V.I. 2013)). "The first step when interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning. If the statutory language is unambiguous and the statutory scheme is coherent and consistent, no further inquiry is needed." *Id.* (quoting *Kelley v. Gov't of the V.I.*, 59 V.I. 742, 745 (V.I. 2013)) (internal quotation marks omitted). In examining a statutory scheme, we must look to "the context surrounding each statute" to determine the Legislature's intent, *Ottley v. Estate of Bell*, 61 V.I. 480, 493 (V.I. 2014), and "must give effect to every provision, making sure to avoid interpreting any provision in a manner that would render it — or another provision — wholly superfluous and without an independent meaning or function of its own." *L.O.F.*, 62 V.I. at 661 (quoting *Defoe v. Phillip*, 56 V.I. 109, 129 (V.I. 2012)) (internal quotation marks omitted); *see also* 1 V.I.C. § 42 ("Words and phrases shall be read with their context.").

Chapter 11 of title 24 of the Virgin Islands Code governs workers' compensation in the Territory, providing that "[e]very employer shall pay compensation as hereinafter specified for the disability or death of an employee resulting from a personal injury or occupational disease arising out of and in the course of his employment, irrespective of fault as a cause of the injury or death." 24 V.I.C. § 252. Every employer is required to

interpreting the case-or-controversy requirement of Article III of the United States Constitution. But as this Court has explained on numerous occasions, "Article III of the United States Constitution does not apply to local courts and no provision of Virgin Islands law includes a case-or-controversy requirement." *Hodge*, 62 V.I. at 687 n.8 (citing *Malloy v. Reyes*, 61 V.I. 163, 171 n.4 (V.I. 2014)). More significantly, the Government makes no substantive argument and cites no authority for the baseless proposition that complying with a Superior Court order moots the subject of that order on appeal.

"secure the payment of compensation under this chapter by insuring with the Government Insurance Fund." 24 V.I.C. § 272(a). This requires the employer to pay a premium and file "the necessary reports" with the Government Insurance Fund annually and any employer that fails to pay into the fund or fails to satisfy the reporting requirement "shall be considered an uninsured employer." 24 V.I.C. § 272(c). An insured employer is immune from legal action by the injured employee. 24 V.I.C. § 284(a). An uninsured employer, on the other hand, is not. 24 V.I.C. § 261(b)(1).

In this case, the Superior Court initially dismissed Island Tile because it believed that Island Tile was immune from suit as an insured employer. *Island Tile*, 57 V.I. at 604-05. But the Superior Court later granted the estate's motion to bring Island Tile back into the case after the estate alleged that it subsequently discovered evidence that Island Tile failed to comply with the requirements of section 272(c), making it an uninsured employer subject to suit. *Id.*; *Bertrand v. Cordiner Enters., Inc.*, 55 V.I. 267, 284 (V.I. Super. Ct. 2011) (granting the motion because, assuming the estate's allegations are true, "Island Tile is an uninsured employer" subject to suit).

The injured employee of an uninsured employer is still entitled to workers' compensation from the Government Insurance Fund. 24 V.I.C. § 261(a)(1). But "[i]n the case of an injury to an employee, who was injured while working for an uninsured employer, the Administrator [of the Government Insurance Fund] . . . *shall collect from the employer*, to be covered into the Uninsured-Employer Cases Fund . . . such compensation and expenses" paid to the injured employee, in addition to a 30 percent penalty. 24 V.I.C. § 261(a)(2) (emphasis added).

Instead of seeking reimbursement from Island Tile for the $204,014 paid from the Government Insurance Fund to Bertrand and his family — as specifically directed by section 261(a)(2) — in this instance the Government instead sought to attach a lien to any recovery the estate obtained from Island Tile. The only justification offered for this action is the Government's citation to 24 V.I.C. § 263, which the Government contends gives it the automatic right to recover against the estate's settlement. Although the Superior Court agreed with this argument, the plain language of section 263 — when read in context with section 261 and the rest of the workers' compensation statutory scheme — shows that the Government's reading of section 263 is flawed.

Section 263 governs the liability of third persons in worker-injury cases, providing that where an injured employee receives compensation from the Government Insurance Fund for an injury that occurred "under circumstances making third persons responsible for such injury, disease or death, the injured workman or employee or his beneficiaries may claim and recover damages from the third person responsible for said injury, disease, or death." 24 V.I.C. § 263. Under these circumstances, "the Administrator shall subrogate himself to the rights of the workman or employee or of his beneficiaries, and may institute proceedings against such third person in the name of the injured workman or employee or of his beneficiaries," and "[n]o compromise between the injured workman or employee, or his beneficiaries in case of death, and the third person responsible shall be valid or effective in law unless the expenses incurred by the Government Insurance Fund in the case are first paid." 24 V.I.C. § 263.

The Government insists that this language clearly entitles it to recover the $204,014 paid out by the Government Insurance Fund from the settlement between the estate and Island Tile. But Island Tile is not a "third person" under section 263 — it is instead an uninsured employer under section 261. The distinction between a "third person" and an "uninsured employer" under chapter 11 is demonstrated by 24 V.I.C. § 261(d)(1), which provides that "[i]n cases declared uninsured in which the accident is due to negligence of a *third person,* the *uninsured employer* who has paid to the Government Insurance Fund the total amount [owed to the Uninsured-Employer Cases Fund], may subrogate himself to the rights of the employee to recover the expenses incurred by him as a result of the accident." Thus, clearly the "uninsured employer" discussed in section 261, and the "third person" discussed in section 263 are two distinct entities, and here, Island Tile is the uninsured employer, rendering section 263 inapplicable to the estate's action against Island Tile.

Instead, the "third persons" in this case are Mystic and Abaco, which were not Bertrand's employers, but which the estate claims were responsible for Bertrand's death. Accordingly, the Government can recover the $204,014 paid out for Bertrand's death, plus a penalty, directly from Island Tile as the "uninsured employer" under section 261(a)(2); or it can recover against any settlement or judgment rendered in the estate's favor against Mystic and Abaco as the "third persons" in

786

this case under section 263. But no provision of chapter 11 provides for the Government to recover these funds out of a settlement or judgment in the estate's favor against the "uninsured employer."

And while the Superior Court expressed the concern that, without taking the $204,014 out of the settlement proceeds, the estate would be compensated twice in this case — once from the Government Insurance Fund and again from Island Tile — that simply will not happen here. If the Government cannot recover those funds from Island Tile directly, it will be reimbursed through any recovery the estate obtains from Mystic or Abaco. *See* 24 V.I.C. § 263 ("No judgment shall be entered in actions of this nature and no compromise whatsoever as to the rights of [the employee, or his beneficiaries in case of death, and the third person responsible] shall be approved, without making express reserve of the rights of the Government Insurance Fund to reimbursement of all expenses incurred."). Moreover, even if the Government obtains reimbursement from Island Tile — making recovery against any judgment for the estate unnecessary — the estate still would not receive double compensation since Mystic and Abaco would be able to present evidence at trial that the estate received workers' compensation. *See* 5 V.I.C. § 427 ("Any party may introduce evidence that the other party who is claiming damages for medical expenses or lost income has received, or is entitled to receive, other compensation for such damages, including, but not limited to benefits from workmen's compensation.").

Therefore, the Superior Court erred in holding that the estate must reimburse the Government Insurance Fund through funds obtained in the settlement with Island Tile, and we reverse that order as well.

## IV. CONCLUSION

Because the estate presented genuine issues of material fact regarding its causes of action against Mystic and Abaco, the Superior Court erred in granting summary judgment to those parties. Further, the Superior Court erred in holding that the Government could recover the $204,014 paid in workers' compensation benefits from the settlement reached between the estate and Island Tile. Therefore, we reverse the Superior Court's October 31, 2013 order granting summary judgment, reverse the Superior Court's November 15, 2013 order directing the estate to reimburse the Government with the settlement proceeds, and remand for further proceedings.