IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

November 19, 2024 04:09 PM
SCT-Civ-2022-0118
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| **MILTON BURT,** | ) **S. Ct. Civ. No. 2022-0118** |
| Appellant/Plaintiff, | ) Re: Super. Ct. Cs. No. 548/2021 (STX) |
| | ) |
| v. | ) |
| | ) |
| **LOCKHEED MARTIN CORP., GLENCORE,** | ) |
| **LTD., and COSMOGONY II, INC.** | ) |
| Appellees/Defendants. | ) |

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Alphonso G. Andrews

Considered: February 13, 2024
Filed: November 19, 2024

Cite as 2024 VI 33

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and
**IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Dana M. Hrelic, Esq. (argued)**
**Meagan A. Cauda, Esq.**
Pullman & Comley, LLC
Hartford, Connecticut

**J. Russel B. Pate, Esq.**
The Pate Law Firm
St. Croix, U.S.V.I.
          *Attorneys for Appellant,*

**Kevin A. Rames, Esq.**
**Semaj Johnson, Esq.**
K.A. Rames, P.C.
St. Croix, U.S.V.I.

**Andrew C. Simpson, Esq. (argued)**
Andrew C. Simpson, P.C.
St. Croix, U.S.V.I.

**Gregory K. Wu, Esq.**
**Sangeeta Shastry, Esq.**
Shook, Hardy & Bacon, LLP
Kansas City, Missouri
        *Attorneys for Appellee.*

## OPINION OF THE COURT

**HODGE, Chief Justice.**

¶ 1    Appellant Milton Burt seeks reversal of the Superior Court's December 6, 2022 order granting summary judgment in favor of Lockheed Martin Corp. (Lockheed).  The Superior Court found that Burt's personal injury claims were barred by the Virgin Island's two-year statute of limitations.  For the reasons that follow, we affirm the grant of summary judgment as to the asbestos exposure claims and reverse the dismissal of the bauxite and alumina dust-related claims.

### I. BACKGROUND

¶ 2    Burt was employed for 25 years as a maintenance worker from 1967-1985 and again from 1988-1995 at the Alumina Plant in St. Croix (the Alumina Plant).  Burt later worked as a mechanic at the Hess Refinery for 10 years from 2002-2012.  The Alumina Plant was owned and operated by Lockheed's predecessors, various Martin Marietta Corporation entities, from 1972-1985.[1]

¶ 3    Sometime before February 7, 2019, Burt contacted Attorney Russell Pate's law firm and sent back to Attorney Pate a one-page application form wherein Burt provided brief responses about his previous employment and health issues.  The form asked only if the individual ever worked directly for HESS/HOVIC and for how long, and Burt responded: "Yes! 7 yrs."

---

[1] Martin Marietta Corporation merged with Lockheed Corporation to form Lockheed Martin Corporation in 1995.

¶ 4     On February 7, 2019, Attorney Pate sent a letter to Burt requesting him to undergo chest x-ray screening to detect possible lung damage.  The letter stated that: "In the past six months you called my office and answered questions about your work at the HESS/HOVIC refinery.  From those answers we selected you for digital x-ray screening."  The letter goes on to state that: "If you did not work at the HESS/HOVIC refinery, but instead worked at the Alumina Plant, then we have confused your information," call my office, "so that we can make sure you are in the Alumina Plant group."

¶ 5     Burt underwent the x-ray screening on February 28, 2019.  From those chest x-rays, Dr. Christopher John detected lung scarring and drafted a report.  In his report, Dr. John stated that the chest x-ray indicated "[p]arenchymal changes diagnostic of pneumoconiosis."[2]  Dr. John's report reads in full: "Given the patient's abnormal chest x-ray and the appropriate latency period, I believe beyond a reasonable degree of medical certainty that he has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure."  (J.A. 5219.)  On March 18, 2019, Attorney Pate received Dr. John's x-ray report.

¶ 6     Attorney Pate then sent Burt another letter on May 20, 2019, instructing him to undergo a pulmonary function test (PFT), which he did on July 21, 2019.  At the time of the PFT intake on July 21, 2019, Attorney Pate met with Burt in person for the first time and conducted a detailed examination of Burt's work history and exposures.

---

[2] "Pneumoconiosis" describes a group of interstitial lung diseases, including asbestosis and mixed dust pneumoconiosis. *Pneumoconioses*, Nat'l Inst. for Occupational Safety & Health (May 17, 2023), https://www.cdc.gov/niosh/topics/pneumoconioses/default.html (last visited on May 8, 2024).

¶ 7     On July 15, 2021, Burt filed his complaint initiating this lawsuit, alleging that he learned of his injury and its cause on July 21, 2019, and claiming injuries caused by exposure to toxic dust particles from bauxite ore dusts, caustic soda, asbestos-containing materials, and alumina dust at the Alumina Plant.  Burt sued Lockheed, and other defendants not relevant to these proceedings,[3] for injuries stemming from exposure to toxic substances.  Burt alleges that Alumina refiners have long understood the dangers of bauxite ore dust, that exposure to such can cause mixed dust pneumoconiosis (MDP) and other serious medical problems, and that Lockheed was negligent with respect to industrial hygiene, health, and safety. Those claims are for: (1) negligent undertaking (Count I); (2) premises liability (Count II); (3) chattel known to be dangerous for intended use (Count III); (4) chattel unlikely to be made safe for use (Count IV); (5) chattel for use by person known to be incompetent (Count V); (6) chattel used to supplier's business purpose (Count VI); and (7) premises liability (Count VII).  In each of those counts, Burt claims injuries resulting from exposure to bauxite dust and its constituents. In Counts I, II, and VII, he additionally claims injuries resulting from exposure to alumina dusts, caustic soda, and asbestos.

¶ 8     Dr. Michael Chesnutt, the doctor who performed the July 21, 2019 PFT on Burt, testified in a September 23, 2022 deposition that a PFT assesses lung function and does not identify any specific diseases or their causes.  (J.A. 200.)  He further testified that in Burt's PFT report he did not express any opinion regarding Burt's diagnosis.  (J.A. 202-03.)

¶ 9     Dr. John met with Burt on July 6, 2022, a year after the complaint was filed, and performed a physical examination upon him and discussed his work history, work duties, and health.  After

---

[3]  On July 11, 2023, Burt and Glencore, Ltd. notified this Court that the parties had executed a binding settlement agreement in the present case. On June 4, 2024, this appeal was dismissed as to Glencore, Ltd. (SCT-CIV-2022-0118, June 7, 2024, Order).

this meeting, Dr. John issued an expert report stating that the PFT results showed that Burt had borderline restriction and moderate small airways obstruction and concluded that Burt "had an extensive industrial history of asbestos, bauxite, and alumina dust exposure during his work at the Alumina [P]lant. Based on that exposure, his abnormal chest x-ray showing lung scarring/fibrosis, his abnormal pulmonary function test showing decreased lung function and the appropriate latency period," Dr. John concluded Burt "has evidence of bilateral parenchymal fibrosis diagnostic of mixed dust pneumoconiosis to include asbestosis." (J.A. 252.)

¶ 10   After the completion of discovery, Lockheed moved for summary judgment, arguing that any tolling of the two-year statute of limitations expired on March 18, 2019 when Attorney Pate received Dr. John's 2019 report. Burt countered that the discovery rule tolled the statute of limitations until at least July 21, 2019, when Burt completed the PFT and met with Attorney Pate to discuss his work history. The parties agreed in the trial court that the "discovery rule" applied to toll the statute of limitations because Burt's claimed injury was latent, wherein the injury developed after several years of exposure. (J.A. 6191.) The parties also agreed that Burt was aware of the possibility of asbestosis injury by March 18, 2019, when Attorney Pate received Dr. John's initial x-ray report. (J.A. 6190-91.)

¶ 11   On November 23, 2022, the Superior Court held a hearing on Lockheed's summary judgment motion. On December 6, 2022, the Superior Court issued its opinion granting Lockheed's summary judgment motion and dismissed all of Burt's claims. The Superior Court noted Burt's deposition testimony wherein he stated that he had worked with asbestos at the Alumina Plant and emphasized the fact that Burt knew the difference in color between insulation that contained asbestos and insulation that did not. Additionally, the court noted that Burt acknowledged in his response to interrogatories that he had been exposed to asbestos while

performing various job duties at the Alumina Plant. The court also referenced Dr. John's deposition in which he discussed what Burt told him about his work history: "And I asked him to tell me about the process at the bauxite plant because I didn't know much about the process and he was very knowledgeable on that. He explained to me the process where he would get exposed and whether it was on the red or the white side, and how he was exposed to asbestos as well as all the dust from bauxite." (J.A. 6271.)

¶ 12    The Superior Court concluded that although the discovery rule applied to toll the statute of limitations, tolling expired at the latest on March 18, 2021, and thus the complaint filed on July 15, 2021 was time-barred. The Superior Court relied on Dr. John's 2019 report and Burt's deposition testimony and response to interrogatories to determine that at the time Attorney Pate received Dr. John's report on March 18, 2019, Burt knew that the main source of any asbestos exposure must have been his employment at the Alumina Plant. The court found that an attorney-client relationship existed between Burt and Attorney Pate in February 2019, and therefore Attorney Pate's knowledge of Dr. John's report was imputed to Burt. The court thus granted the motion for summary judgment and dismissed the entire complaint with prejudice. Burt timely filed this appeal on December 28, 2022. *See* V.I. R. APP. P. 5(a)(1).

## II. DISCUSSION

### A.  Jurisdiction and Standard of Review

¶ 13    "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees or final orders of the Superior Court, or as otherwise provided by law." 4 V.I.C. § 32(a). The Superior Court's December 6, 2022 order granting summary judgment to Lockheed was a final order within the meaning of section 32(a), and therefore we have jurisdiction over this appeal. *See Joseph v. Daily News Publ'g Co.*, 57 V.I. 566, 581 (V.I. 2012).

¶14    We apply plenary review to the Superior Court's grant of summary judgment.  *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 379 (V.I. 2014).  "In conducting this review, we apply the same test as the Superior Court and view all inferences from the evidence in the light most favorable to . . . the nonmoving party, and take [its] allegations as true if properly supported."  *Id.*  "The movant bears the burden of demonstrating the absence of any genuine issue of material fact based upon the record."  *Aubain v. Kazi Foods of V.I., LLC*, 70 V.I. 943, 948 (V.I. 2019).  "Because summary judgment is a drastic remedy, the grant of a motion for summary judgment is allowed only where the moving party shows that the pleadings, the discovery and disclosure materials on file, and any affidavits, show there is no genuine issue as to any material fact."  *Williams v. United Corp.*, 50 V.I. 191, 194 (V.I. 2008) (internal quotation marks omitted).

## B.  Statute of Limitations

### 1.  *Discovery Rule*

¶ 15    The Superior Court dismissed the case in its entirety at the summary judgment stage after concluding that the complaint was filed outside the statute of limitations, even as extended by the discovery rule adopted in *Santiago v. V.I. Hous. Auth.*, 57 V.I. 256, 273 (V.I. 2012) from *Joseph v. Hess Oil*, 867 F.2d 179, 182 (3d Cir. 1989).  The statute of limitations for a personal injury action in the Virgin Islands is two years.  5 V.I.C. § 31(5)(A) (1977).  "Once a cause of action has accrued and the statutory period for bringing the action has expired, an injured party is barred from bringing suit unless the statute of limitations has been tolled."  *Santiago*, 57 V.I. at 273 (quoting *Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991)).  "Accrual takes place on the occurrence of the essential facts that give rise to that cause of action."  *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 230 (V.I. 2013) (internal quotation marks omitted).  "The discovery rule has been characterized both as delaying the accrual of a cause of action and as tolling the running of the

limitations period." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 148 (3d Cir. 2011). This Court has noted that "[e]ssentially, the discovery rule operates to delay the time when the statute of limitations on a plaintiff's claim begins to accrue." *Santiago*, 57 V.I. at 298.

¶ 16    The parties in the trial court agreed that the discovery rule applied, and the trial court relied on *Joseph* and *Santiago* in analyzing and applying the discovery rule. In his appellate brief, Burt argues that the Superior Court improperly applied the discovery rule and, furthermore, that the court erred by not conducting a *Banks* analysis on the appropriate applicability of the discovery rule in the Virgin Islands. Lockheed, on the other hand, claims in its appellate brief that the Superior Court improperly applied the discovery rule by not interpreting the tolling provision of the discovery rule as being lifted when Burt first learned of his asbestosis injury instead of requiring that he also know the cause of that injury; but because the court ultimately arrived at the correct conclusion, it committed no or only harmless error.[4]

---

[4] Lockheed also argues that a *Banks* analysis was not required because the statute of limitations is an issue of statutory construction. Burt is correct in arguing that Lockheed waived this statutory argument by failing to raise it before the trial court. *See* V.I. S. CT. R. 22(m) ("Issues that were. . . not raised or objected to before the Superior Court are deemed waived for purposes of appeal. . . .").

In pressing its statutory construction claim, Lockheed argues that because this Court has held that the parties cannot stipulate to the law, this argument is not waived. *See Simmons v. People*, 59 V.I. 480, 493 (V.I. 2013) ("This Court has repeatedly cautioned that parties may not, through explicit agreement or implicitly by omission, stipulate to the law."). However, that determination is for the appellate court to decide and does not permit an extensive argument on appeal claiming the opposite of what the party stipulated below merely to avoid waiver. *See Bryan v. Fawkes*, 61 V.I. 201, 224 (V.I. 2014). Rather, permitting a party to adopt one position in the lower court and switch to the opposite on appeal in order to introduce new arguments has the possibility of promoting gamesmanship and/or invoking the invited error doctrine. *See Najawicz v. People*, 58 V.I. 315, 336-38 (V.I. 2013). We thus conclude that Lockheed's statutory construction argument is waived and will not be addressed as part of this appeal.

¶ 17　We will first determine the applicability of the discovery rule in the Virgin Islands and whether the Superior Court erred by not conducting a *Banks* analysis before applying the discovery rule to this case.

¶ 18　In *Joseph v. Hess Oil*, the Third Circuit Court of Appeals reviewed a District Court of the Virgin Islands case which held that "the Virgin Islands statute of limitations is tolled in an asbestos action until '(1) a plaintiff knows that he has an asbestos-related injury and its cause by virtue of the physical manifestation of the effects of the disease; or (2) the plaintiff has reason to know of his asbestos injury and its cause through the exercise of reasonable diligence.'"  867 F.2d at 182 (quoting *Joseph v. Hess Oil V.I. Corp.*, 671 F. Supp. 1043, 1047 (D.V.I. 1987)).  The Third Circuit, acknowledging that it had never formally adopted the discovery rule in construing the Virgin Islands statute of limitations, and while taking no issue with the District Court's characterization of the discovery rule, held that the application of the discovery rule, as previously outlined by the Third Circuit, applied to the Virgin Islands' statute of limitations.  The Third Circuit described its previously outlined discovery rule as: "[i]n the asbestos litigation context, the discovery rule would suspend the statutory period until the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct."  867 F.2d at 182 n.8 (quoting *Cicarelli v. Carey Canadian Mines, Ltd.*, 757 F.2d 548, 553 (3d Cir. 1985)).  Thus, the court in *Joseph* stated the general rule that "application of the equitable 'discovery rule' tolls the statute of limitations when the injury or its cause is not immediately evident to the victim"; and in the context of asbestos litigation, the discovery rule suspends "the statutory period until the plaintiff knows, or reasonably should know: (1) that he or she has been injured; and (2) that the injury has been caused by another party's conduct."  *Id.*

¶ 19    Decisions of the Third Circuit decided when it served as the de facto head of the Virgin Islands judiciary, although not binding on this Court, are nevertheless entitled to great respect. *See In re People of the V.I.*, 51 V.I. 374, 389 n.9 (V.I. 2009). In *Santiago v. V.I. Hous. Auth.*, this Court first applied the discovery rule, relying on *Joseph* and concluding that "[t]he discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim." 57 V.I. at 273[5] (quoting *Joseph*, 867 F.2d at 182). This Court has cited the discovery rule approvingly several times since *Santiago*, citing to either *Santiago* or *Joseph*. *See Pichierri v. Crowley*, 59 V.I. 973, 978 (V.I. 2013) (citing to the discovery rule in *Joseph* but finding that the harm was immediately apparent); *Anthony v. FirstBank Virgin Islands*, 58 V.I. 224, 230 n.8 (V.I. 2013) (citing to discovery rule in *Joseph* but noting that the appellant waived the issue); *United Corp. v. Hamed*, 64 V.I. 297, 305-06 (V.I. 2016) (citing to *Santiago* and discussing the discovery rule in the context of competing business claims); *Marsh-Monsanto v. Clarenbach*, 66 V.I. 366, 375 (V.I. 2017) (discussing the discovery rule in the property law context); *Estate of Skepple v. Bank of Nova Scotia*, 69 V.I. 700, 741 (V.I. 2018) (discussing the due diligence standard of the discovery rule). Thus, while this Court in *Santiago* may not have expressly repeated the two-prong *Joseph* test, it has consistently applied that test for the tolling provisions of the discovery rule to the Virgin Islands statute of limitations. *Santiago*, 57 V.I. at 273.[6]

---

[5] In *Santiago*, this Court concluded that the plaintiff was immediately aware of both her injuries and their cause on the date that they occurred. *Santiago*, 57 V.I. at 275.

[6] The Virgin Islands Superior Court has likewise followed suit, routinely citing to *Santiago* and *Joseph* for application of the discovery rule. *See, e.g., Serieux v. Schneider Clinic*, 74 V.I. 429, 435 (V.I. Super. Ct. 2021) (noting that "the discovery rule is a recognized exception to both 5 V.I.C. § 31(5)(A) and 27 V.I.C. § 166d); *Hess Oil V.I. Corp. v. Fluor Daniel*, 72 V.I. 676, 704

¶ 20    We recently stated in *Klein v. Bassil*, 2023 VI 14, ¶¶ 15-16, that where this Court has adopted a rule in a case determined before *Banks*[7] or adopted a rule "mechanistically or uncritically, . . . the Superior Court need not consider itself foreclosed from adopting a different common law rule" (citing *Connor*, 60 V.I. at 605 n.1); however, we warned that the Superior Court may not overrule decisions of the Supreme Court.[8]  The Superior Court in this case, aware of this authority, saw no reason to come to a different conclusion than those of our prior holdings in *Santiago* and other cases on the discovery rule issue.  Thus, the Superior Court did not err by foregoing a *Banks* analysis in this case before applying the discovery rule, citing *Santiago*.  Based on this Court's precedent and its uniform treatment in the Virgin Islands, we take this opportunity to confirm that the discovery rule as outlined and applied by *Santiago* and adopted from *Joseph* applies to the Virgin Islands statute of limitations.

---

(V.I. Super. Ct. 2020) (noting that the discovery rule continues to apply in the Virgin Islands); *Gerald v. R.J. Reynolds Tobacco Co.*, 67 V.I. 441, 460 n. 48 (V.I. Super. Ct. 2017) (discussing Virgin Islands Supreme Court treatment of the discovery rule and whether it applies to breach of contract actions), *aff'd in part, vacated in part, modified in part on other grounds*, 76 V.I. 656 (V.I. 2022).

[7] The *Santiago* opinion was decided after our decision in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967 (V.I. 2011), which accords decisions of the Third Circuit great respect as persuasive authority but not as binding precedent on this court, and was made in full recognition of the Third Circuit's holding in *Joseph*, 867 F.2d at 182, adopting and applying the discovery rule to the Virgin Islands statute of limitations.

[8] "But while we have held that the Superior Court need not consider itself foreclosed from adopting a different common law rule when the only binding precedent applicable to it pre-dated *Banks*, this is not tantamount to dispensing with the long-standing rule that the Superior Court may not overrule the Supreme Court. . . . [T]he fact that this Court – the highest court of the Virgin Islands, vested with exercise of the supreme judicial power of the territory – has adopted the Restatement rule. . .provides extraordinary support for accepting the Restatement or majority rule, for the legal community and the public can rely on no greater authority than a decision of this Court for a determination of the common law of the Virgin Islands." *Klein*, 2023 VI 14, at ¶ 16 (internal citations omitted).

¶ 21    The parties to this appeal differ on whether the discovery rule is conjunctive or disjunctive, i.e., whether the injury <u>and</u> the cause must both be known (or reasonably should be known) or whether either the injury <u>or</u> the cause must be known (or reasonably should be known) in order to commence the running of the statute of limitations.  The Superior Court applied the conjunctive standard (knowledge of injury <u>and</u> its cause), and Burt agrees that the rule is conjunctive, although disagreeing with the Superior Court's application of the rule in this case.  Lockheed, however, argues that the discovery rule is disjunctive, meaning that tolling ceases once the plaintiff knows of either the injury <u>or</u> the cause.

¶ 22    As previously discussed, the *Joseph* court outlined a two-prong rule in which both the injury <u>and</u> the cause must be known before the statute of limitations begins to run.  867 F.2d at 182 n.8.  Thus, the discovery rule as applied under *Joseph*, tolls the commencement of the running of the statutory period until the plaintiff knows, or reasonably should know ***both*** that he or she has been injured ***and*** the cause of the injury.

¶ 23    In *Santiago*, this Court cited approvingly to *Joseph* in articulating and applying the discovery rule.  However, as support for its argument for the disjunctive interpretation of the discovery rule, Lockheed cites to language in the *Santiago* opinion quoted from *Joseph* which used disjunctive language, stating that "[t]he discovery rule tolls the statute of limitations when, despite the exercise of due diligence, the injury or its cause is not immediately evident to the victim."  57 V.I. at 273 (citing *Joseph*, 867 F.2d at 182).[9]  Lockheed's argument lacks merit, however, as the statement in *Santiago* clearly states that the statute of limitations is tolled when either the injury

---

[9] Lockheed also notes that we later cited to *Santiago* quoting this same disjunctive language in *United Corp. v. Hamed,*  64 V.I. at 310 ("The discovery rule tolls the statute of limitations when the injury <u>or</u> its cause is not immediately evident to the victim.").

or its cause is not immediately evident to the victim.  Thus, the tolling of the statute of limitations is not lifted when only one element, either the injury or its cause, is known to the victim.  Rather, tolling only ceases when the victim knows, or reasonably should have known, both of the injury and its cause. That is exactly the rule -- injury and cause -- applied in *Santiago's* holding:

> The discovery rule is not applicable to the two-year statute of limitations on Santiago's claims against ABC Janitors.… Based on her own assertions, Santiago was **both** aware of her alleged injuries **and** their cause on the date they occurred, October 23, 2001. Therefore, Santiago's claims against ABC Janitors began to accrue on October 23, 2001, and because Santiago's claims against ABC Janitors were not filed until August 2004—more than two years after her claims accrued and the limitation period started to run—Santiago's claims are barred by the two-year statute of limitations. *See* 5 V.I.C. § 31(5)(A). (emphasis added)[10].

*Santiago*, 57 V.I. at 273.

¶ 24    Therefore, we hold that the conjunctive view of the discovery rule principles as articulated in *Joseph* and *Santiago*, requiring that the plaintiff have knowledge of both the injury and its cause, is the proper construction applicable to the Virgin Islands statute of limitations.  Since the Superior Court appropriately applied the conjunctive interpretation of the rule in this case, it committed no error.

¶ 25    This Court has noted various parameters of the discovery rule as applied to latent injuries. "[T]he statute of limitations begins to run on the first date that the injured party possesses sufficient critical facts to put him on notice that a wrong has been committed and that he need investigate to determine whether he is entitled to redress."  *Santiago*, 57 V.I. at 274 (quoting *Zeleznik v. United States*, 770 F.2d 20, 23 (3d Cir. 1985)).  Under the discovery rule, the focus is not on the "plaintiff's

---

[10] The concurrence in *Santiago* also articulated the discovery rule as knowledge of the injury and its cause. "Under the rule, the statute of limitations will start to run at the time that two conditions are satisfied: (1) when the plaintiff knew or should have known that he suffered harm and (2) when the plaintiff knew or should have known the cause of his injury."  *Santiago*, 57 V.I. at 298-99 (Swan, J., concurring) (quoting *Tutu Wells*, 909 F. Supp. at 985).

actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." *Id*. at 273 (quoting *Bohus*, 950 F.2d at 925). "To demonstrate reasonable diligence, a plaintiff must establish [ ] that he pursued the cause of his injury with those qualities of attention, knowledge, intelligence and judgment which society requires of its members for the protection of their own interests and the interests of others." *Id.* (quoting *Mest v. Cabot Corp.*, 449 F.3d 502, 511 (3d Cir. 2006)). "Generally speaking, due diligence is such a measure of prudence, activity, or assiduity, as is properly to be expected from, and ordinarily exercised by, a reasonable and prudent person under the particular circumstances; not measured by any absolute standard, but depending on the relative facts of the special case." *Estate of Skepple*, 69 V.I. at 741 (internal quotation marks and citations omitted). This determination is made using an objective, reasonable person standard. *Joseph*, 867 F.2d at 184.

### 2. *Application of the Discovery Rule*

¶ 26    Having set forth the relevant law of the discovery rule, we turn to the merits of the instant appeal. We first address the attorney-client relationship between Burt and Attorney Pate. The Superior Court found that an attorney-client relationship existed between Burt and Attorney Pate as early as February 7, 2019, if not before. Accordingly, the Superior Court found that Attorney Pate's knowledge of Dr. John's report received on March 18, 2019 was imputed to Burt. The Superior Court concluded that Attorney Pate's knowledge of the 2019 report coupled with Burt's knowledge of his work history was sufficient to inform Burt that he had asbestosis and the cause thereof was exposure to asbestos.

¶ 27    "[T]he discovery rule does not operate in a vacuum, but in conjunction with the imputed knowledge rule." *Arlington Funding Servs., Inc. v. Geigel*, 51 V.I. 118, 131 (V.I. 2009). It is well established that "the attorney-client relationship is an agent-principal relationship." *Id.* (quoting

*McCarthy v. Recordex Serv., Inc.*, 80 F.3d 842, 853 (3d Cir. 1996)).  Accordingly, "information an attorney receives during the scope of his representation of a client will be imputed onto that client even if the client does not have actual knowledge of that information."  *Id.* (citing *Lempert v. Singer*, 26 V.I. 326, 341 (D.V.I. 1991) (imputing attorney's knowledge of an easement to his client)).  In *In the Matter of Rogers*, this Court found that because the attorney provided legal services to the plaintiff, he assumed the obligations and duties attendant to an attorney-client relationship, despite never having signed a retainer agreement.  2012 V.I. Supreme LEXIS 79, at *12 (V.I. Oct. 26, 2012) (unpublished) (per curiam).  And as noted earlier, Burt agreed in his brief that "an attorney-client relationship existed between him and Pate as of February 2019." (Appellant's Br. 35.)  Therefore, we conclude that the Superior Court committed no error in finding that an attorney-client relationship existed in February 2019 and that Attorney Pate's knowledge of Dr. John's March 18, 2019 report was imputed to Burt.

¶ 28     While Burt agreed to and stipulated that an attorney-client relationship existed in February 2019, he argues that the Superior Court erred in its determination of what knowledge Pate had to impute, asserting that Pate did not know of the cause of Burt's injuries until after the July 21, 2019 PFT visit and meeting with Burt.  (Appellant's Br. 35-36.)  Burt agrees that Attorney Pate knew of Burt's injury upon receiving Dr. John's 2019 report but argues that Pate could not have known the cause of the lung scarring identified in the report.  (Appellant's Br. 36.)

¶ 29     The parties also agreed that Burt was aware of the possibility of an asbestosis injury by March 18, 2019 (Appellant's Br. 12) and the uncontested evidence of the record confirms this conclusion. The parties reiterated this agreement at oral argument.[11]

---

[11] *See* Judicial Branch of the U.S. Virgin Islands, *Burt v Lockheed Martin Corp et al SCT CIV 2022 0118*, 9:52-10:05 & 40:57-41:20, YouTube (Feb. 21, 2024), https://youtube.com.

¶ 30    The key issue for determination, as articulated by the Superior Court, is: when did Burt know or should reasonably have known the cause of his injury such that he was required to file suit within two years of that date.  The Superior Court found that Burt knew or should have known by March 18, 2019 that he had an injury (asbestosis) and that it was caused by his exposure to asbestos while employed at the Alumina Plant.  In addition to Dr. John's March 18, 2019 letter, the Superior Court considered that, prior to the 2019 letter, Burt knew that:  (1) he worked at the Alumina Plant for 25 years; (2) he sought legal (not medical) representation due to his declining health; (3) he discussed his work history with counsel at the time of his initial outreach to Attorney Pate's office; (4) he was advised to report for an x-ray screening to determine whether he had lung damage; and (5) he knew he was embarking on a procedure to determine whether he qualified for a lawsuit against HESS/HOVIC or his former employers at the Alumina Plant because of lung damage due to asbestos exposure.  The Superior Court concluded that this information, coupled with Dr. John's 2019 report, was undisputed and was more than sufficient to put a reasonable person on notice that he had suffered an injury (asbestosis) and that it had been caused by a history of exposure to asbestos.

¶ 31    Burt claims that the Superior Court erred in concluding that Burt knew of or should have known of his injury by March 18, 2019.  Burt asserts that at the time of his initial outreach to Attorney Pate in February 2019, at most he could have reasonably connected his potential injury to his employment with Hess/HOVIC, but not to the Alumina Plant.  Burt also argues that the Superior Court improperly weighed Dr. John's 2019 report, which Burt asserts is not a formal diagnosis.  Furthermore, Burt avers that he did not know the cause of his injury because he did not know the specifics of his medical diagnosis (mixed dust pneumoconiosis) even at the time of his deposition in August 2022.  Finally, Burt argues that he did not know that he was exposed to

harmful materials, nor did he know of the negative effects of exposure to asbestos and bauxite dusts until the July 21, 2019 conversation with Attorney Pate. Burt claims that at the very least, this evidence, when viewed most favorably to him, creates a genuine issue of material fact as to whether he knew the cause of his injury in March 2019.

¶ 32   Because summary judgment is a drastic remedy, a court should take special caution to avoid usurping the jury's role as factfinder. This Court has favored disposition on the merits and has reversed grants of summary judgment wherever there is a reasonable dispute as to any material fact that remains outstanding. *See, e.g., Rymer v. Kmart*, 68 V.I. 571, 583 (V.I. 2018); *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 787 (V.I. 2015); *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 399-400 (V.I. 2014); *Pickard-Samuel v. Gov't of the V.I.*, No. 2008-0031, 2010 V.I. Supreme LEXIS 19, at *12 (V.I. June 4, 2010). We are mindful that "because the application of the discovery rule rests on when a party knew or should have known of its injury and its cause, it is typically a question of fact." *Hamed*, 64 V.I. at 306 (holding that whether the discovery rule tolled the statute of limitations on the plaintiff's claims depended heavily on factual development of the record and thus was not necessarily fit for disposition on the pleadings); *see also Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) ("Pursuant to application of the discovery rule, the point at which the complaining party should reasonably be aware that he has suffered an injury is a factual issue best determined by the collective judgment, wisdom and experience of jurors."). Furthermore, the question of whether a plaintiff has exercised reasonable diligence is usually a jury question. *Bohus*, 950 F.2d at 925; *see also Jose v. HOVENSA, LLC*, No. 11-CV-0052, 2012 WL 2285203, at *5 (D.V.I. June 18, 2012) ("Generally, determinations as to whether a plaintiff failed as a matter of law to exercise reasonable diligence for purposes of the discovery rule and equitable tolling are typically within the fact finder's province."). However, "[w]hen the [relevant]

underlying facts are undisputed, application of the statute of limitations presents a question of law that may be resolved by summary judgment." *Marsh-Monsanto*, 66 V.I. at 375. Additionally, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). As to materiality, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Hancock v. Scheffer,* 811 F.2d 225, 231 (3d Cir. 1987) (quoting *Anderson*, 477 U.S. at 248).

¶ 33    First, there is no dispute as to knowledge of the asbestosis injury in this case in March of 2019 and Burt misunderstands what is required by the second prong of the discovery rule.

> The polestar of the discovery rule is not the plaintiff's actual knowledge, but rather whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff. Every plaintiff has a duty to exercise reasonable diligence in ascertaining the existence of the injury and its cause. Although there are very few facts which reasonable diligence cannot discover, . . . there must be some reason to awaken the inquiry and direct diligence in the channel in which it would be successful. . . . The statute of limitations begins to run as soon as the plaintiff has discovered or, exercising reasonable diligence, should have discovered the injury and its cause.

*Bohus*, 950 F.2d at 925. Burt was not required to understand the specifics of his injury to know the cause of it. *Id*. at 924-25 ("[t]he plaintiff need not know the exact medical cause of the injury") (internal citations omitted). Similarly, Burt incorrectly interprets the "cause" of the injury as learning the identity of the actor or actors whose conduct may be responsible for the injury sustained. He cites to *In re Tutu Wells* wherein the District Court of the Virgin Islands articulated an "Environmental Discovery Rule" which "prevent[s] the applicable statute of limitations from beginning to run until the plaintiff knew or should have known through the exercise of reasonable diligence sufficient critical facts to put him on notice that (1) he has been injured and (2) the actions

*Burt v. Lockheed Martin*            2024 VI 33
S. Ct. Civ. No. 2022-0118
Opinion of the Court
Page 19 of 28

or inactions of a particular party could have been a cause of that injury." 909 F. Supp. 980, 986 (D.V.I. 1995) (emphasis added). In *Santiago*, we rejected the use of this environmental discovery rule in personal injury cases. *Santiago*, 57 V.I. at 274-75. In personal injury claims, the cause, for purposes of the discovery rule, is the cause of the injury, not necessarily the actor whose conduct results in the injury. *See, e.g., Warner*, 1999 V.I. LEXIS 49, at \*15 (finding that the plaintiff's injury was numbness of the hand and that the cause was nerve damage, not the doctor whose conduct resulted in the nerve damage). Therefore, Burt was not required to know the identity of the actor who caused his injury, nor to understand the specifics of his injury, in order to know the cause of the injury for purposes of the discovery rule. *United States v. Kubrick*, 444 U.S. 111, 123 (1979) (holding that "accrual" of a claim need not await awareness by the plaintiff that his injury was negligently inflicted.)

¶ 34     Secondly, Burt's assertion that he did not know that he had been exposed to harmful materials, including asbestos, at the Alumina Plant until the July 21, 2019 conversation with Attorney Pate, is belied by the undisputed evidence in the record. Burt knew the difference in color between insulation that contained asbestos and insulation that did not in his work at the Alumina Plant. (J.A. 6506.) Burt affirmed in his response to interrogatories that he had been exposed to asbestos while performing various job duties at the Alumina Plant. (J.A. 2225.) Dr. John testified in his deposition that Burt was very knowledgeable about the processes at the bauxite plant, stating that "[Burt] explained to me the process where he would get exposed and whether it was on the red or the white side, and how he was exposed to asbestos as well as all the dust from bauxite." (J.A. 6271.) Burt also argues that he did not know of the negative effects of exposure to asbestos until his July 21, 2019 conversation with Attorney Pate. However, Dr. John's 2019 report indicated that Burt's chest x-ray showed "underlying lung disease. . . diagnostic of

asbestosis and diagnostic of a history of asbestos exposure." (J.A. 233.) A reasonable person with this knowledge, which was imputed to Burt upon Attorney Pate receiving Dr. John's report on March 18, 2019, would understand that asbestos has negative effects on health. A reasonable person in Burt's position, suffering these symptoms, with his work history and exposure to asbestos, coupled with the knowledge that asbestos exposure is linked to underlying lung disease, would know that his injury (asbestosis) was caused by exposure to asbestos during his 25 years employment at the Alumina Plant.

¶ 35     Finally, Burt argues that he pursued the cause of his injury after learning of the injury on March 18, 2019 with reasonable diligence, pointing to the PFT and the initial meeting with Attorney Pate. However, the PFT simply assesses lung function and does not identify any specific diseases or their causes, as stated by Dr. Chesnutt who performed the PFT on Burt. With regard to the initial meeting with Attorney Pate on July 21, 2019, Burt stated that this was the first time he discussed his work history and was informed of the negative effects of asbestos. However, Attorney Pate's February 7, 2019 letter inviting Burt to undergo x-ray screening noted that Burt had spoken with somebody at Attorney Pate's office about his work history and moreover, the letter mentioned employment at the Hess Refinery or the Alumina Plant, if that was instead the place of employment. And, as noted, Attorney Pate's knowledge of the 2019 report was imputed to Burt and a reasonable person with that knowledge would have known the negative effects of asbestos exposure based on the information in the letter and, importantly, Burt had personal knowledge of his own work history and exposure to asbestos at the Alumina Plant.

¶ 36     We conclude that there is no genuine issue as to the relevant material facts controlling application of the statute of limitations in this case as to the asbestos related injury. While the undisputed evidence does not support the finding that Burt discussed his employment at the

Alumina Plant with Attorney Pate prior to their July 21, 2019 face to face meeting, or that Dr. John's 2019 report dealt with his history of employment other than Burt's employment at the Hess/HOVIC Refinery, the undisputed evidence of the material facts in the record supports the Superior Court's finding that Burt was on notice that his exposure to asbestos was at the Alumina Plant. Burt acknowledged that he knew of the existence of his injury on March 18, 2019, when Attorney Pate received Dr. John's February 28, 2019 x-ray report. While Burt claims that the 2019 report was not a formal diagnosis, and that Dr. John did not have any knowledge of Burt's work history to make a diagnosis at that time, the language in the report was fairly explicit: ". . . I believe beyond a reasonable degree of medical certainty that he has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and **diagnostic of a history of asbestos exposure**." (J.A. 5219.) (emphasis added). Burt insists that he could not have known the cause of his injury until his initial meeting with Attorney Pate on July 21, 2019, wherein they discussed his work history and concluded he was most likely exposed to asbestos at the Alumina Plant rather than at the Hess Refinery, and that he did not know anything about asbestos at the time of his employment. However, Burt's own testimony tells a different story regarding his alleged lack of knowledge about asbestos. In his response to interrogatories under oath, Burt stated that he had been exposed to asbestos while performing various job duties at the Alumina Plant. (J.A. 2225.) In his sworn deposition testimony, Burt also stated that he had worked with asbestos at the Alumina Plant and knew the difference in color between insulation that contained asbestos and insulation that did not, and he denied working with asbestos at his other places of employment. (J.A. 6506.) Dr. John stated in his deposition that in their July 6, 2022 meeting, Burt thoroughly explained to him the process of his work where he would be exposed to asbestos and bauxite dusts. (J.A. 6271.) Burt asserts that even if he knew he was working with and could identify asbestos,

he did not know at the time of his employment that asbestos was harmful. However, this Court concludes that Dr. John's 2019 report placed Burt on notice that the asbestosis injury was caused by his exposure to asbestos at the Alumina Plant. It is not required for a plaintiff's attorney, or a plaintiff's doctor, to point to the exact cause of the injury for the statute of limitations to begin to run. The question is "whether the knowledge was known, or through the exercise of diligence, knowable to the plaintiff." *Santiago*, 57 V.I. at 273 (quoting *Bohus*, 950 F.2d at 925). Because Attorney Pate's knowledge of the 2019 report on March 18, 2019 is imputed to Burt, he had the knowledge of the asbestosis injury and the knowledge of his own work history (25 years working with and exposure to asbestos at Alumina Plant) which constitutes the cause of his injury. We therefore conclude that the Superior Court did not err in its conclusion that Burt knew of his asbestosis injury and its cause and thus we affirm its finding that Burt knew or should have known the cause of his injury as asbestos exposure by at least March 18, 2019. The complaint filed on July 15, 2021, was therefore untimely as to the asbestos injury.

### 3. Burt's bauxite and alumina dust claims

¶ 37    Burt, in his appellate brief, argues that even if the claims related to asbestos are barred by the statute of limitations, he should nevertheless be permitted to pursue his claims for injury caused by exposure to bauxite and alumina dusts. He noted that the Superior Court's decision on the commencement date for running of the statute of limitations relied heavily upon Dr. John's 2019 report, which did not mention exposure to bauxite or alumina dusts as a source of his injury, and instead rested exclusively on his exposure to asbestos. Burt therefore asserts that the 2019 report did not alert Burt or Attorney Pate to this possible injury caused by exposure to bauxite and alumina dusts, and thus creates a genuine issue of material fact as to when Burt knew or should have known of his injuries caused by exposure to bauxite and alumina dust.

¶ 38    Burt raised the argument to reinstate his bauxite dust claims in a footnote at the end of his appellate brief.  Lockheed did not respond to this argument in its responsive appellate brief.

¶ 39    Expanding on the bauxite dust claim in his reply brief, Burt cited to *In re Alumina Refinery Toxic Dusts Claims*, 2023 VI Super 71[12] and other legal arguments for the first time.  Arguments raised for the first time in a reply brief will ordinarily not be considered by the Court as the appellee is not afforded the opportunity to respond to those arguments.  *See* V.I. R. APP. P. 22(m); *see, e.g., V.I. Water & Power Auth. v. Cyprian*, No. 2023-0016, 2023 VI 15, ¶ 10 (V.I. Dec. 18, 2023); *Klein*, 2023 VI 14, at ¶ 26; *Smith v. McLaughlin*, 77 V.I. 565, 569 (V.I. 2023); *Aubain v. Kazi Foods of the V.I., Inc.*, 70 V.I. 943, 947 n.1 (V.I. 2019).  Since the *In re Alumina Refinery Toxic Dusts Claims* case and other legal arguments were first raised in the Reply brief, Lockheed had no opportunity to address the relevancy of *In re Alumina Refinery Toxic Dusts Claims* to Burt's claims.  Therefore, we will not consider the merits of that case and other related arguments of the Reply Brief in our consideration of this appeal.

¶ 40    Additionally, arguments not raised in the court below are waived and will not ordinarily be addressed on appeal.  *See* V.I. R. APP. P. 22(m); *see, e.g., Alexander v. Gov't of the V.I.*, No. 2021-0004, 2024 VI 16, ¶ 40 n.6 (V.I. Mar. 26, 2024); *Blyden v. Gov't of the V.I.*, 77 V.I. 399, 403 n.3 (V.I. 2022); *Guardian Ins. Co. v. Knight*, 75 V.I. 345, 351-52 (V.I. 2021); *DaCosta v. DaCosta*, 74 V.I. 640, 646 n.4 (V.I. 2021).  In order for this Court to consider an issue on appeal, "a party needs only to raise an issue [to allow] the Superior Court to address it and take whatever action is

---

[12] Under similar facts to the instant case, the plaintiff in *In re Alumina Refinery Toxic Dust Claims* argued for separate determinations of the statute of limitations on the asbestos exposure and the bauxite dusts exposure.  The Superior Court concluded that, although this is an undecided question in Virgin Islands law, a separate consideration of the two types of exposure is warranted.  *In re Alumina Refinery Toxic Dust Claims* was not decided until November 30, 2023, which was after the instant case was decided on December 6, 2022 and after this appeal was filed.

necessary in the first instance in order to fairly present the issue and preserve it for appeal." *World Fresh Markets, LLC v. Henry*, 71 V.I. 1161, 1172 (V.I. 2019) (internal quotation marks and citations omitted).[13]  In his initial complaint, Burt alleged that over the course of his employment at the Alumina Plant, he was exposed to "bauxite ore dusts (and their constituents and waste products), caustic soda, asbestos-containing materials ("ACM"), and alumina dust."  Burt's complaint also alleged that Alumina refiners have long understood the dangers of bauxite ore dust, that exposure to such can cause mixed dust pneumoconiosis (MDP) and other serious medical problems. While Burt did not explicitly argue separately for a different analysis of the statute of limitation claims involving the bauxite and alumina-related injuries before the Superior Court, he did argue that he had no knowledge of those bauxite dust injuries until he met with his attorney on July 21, 2019, and that summary judgment should be denied as to all claims.  (J.A. 2680-95.)  The bauxite and alumina dust claims were therefore sufficiently presented to the Superior Court and are not waived on appeal.  *See World Fresh Markets, LLC*, 71 V.I. at 1172.

¶ 42     Specifically, as Burt argued in his appellate brief and at oral argument, Dr. John's 2019 report, which the trial court accepted and greatly relied on, only discussed asbestosis and asbestos exposure without any mention of bauxite and alumina dust injuries.  Thus, Burt asserts that the report did not provide him with the required notice of bauxite and alumina dust injuries (mixed dust pneumoconiosis) and that exposure to bauxite and alumina dusts were the cause of his injury. Dr. John's 2019 report stated that: "Given the patient's abnormal chest x-ray and the appropriate

---

[13] Notably, even if Burt waived the separate statute of limitations consideration for the separate class of claims, Lockheed waived that waiver by not addressing the issue when raised in Burt's opening brief.  *See Simpson v. Golden*, 56 V.I. 272, 281 n.6 (V.I. 2012) ("[W]aiver of waiver generally occurs where a litigant fails to raise a procedural default that would result in waiver of the opposing party's position, and therefore waives the right to assert the waiver.").

latency period, I believe beyond a reasonable degree of medical certainty that he has evidence of underlying lung disease in the form of bilateral parenchymal fibrosis diagnostic of asbestosis and diagnostic of a history of asbestos exposure." (J.A. 5219.) Burt's initiating complaint included claimed injuries from exposure to bauxite and alumina dust as well as asbestos. Burt did not set forth an individualized argument for separate consideration of the bauxite and dust claims as part of his defense to the summary judgment motion. But it is undeniably the central thrust of Burt's argument in the Superior Court and on appeal that he did not know of the likely exposure to bauxite and alumina dust (or asbestos) while working at the Alumina Plant until he spoke with Attorney Pate on July 21, 2019, and that inclusion of the claims in the complaint provided notice to the court that he was claiming injury from bauxite and alumina dust as well as the asbestos claims. In his deposition testimony, Burt stated that he had never heard of the term mixed dust pneumoconiosis (MDP) and in his sworn declaration he stated that he did not know he had been exposed to harmful materials at the Alumina Plant until his July 21, 2019 conversation with Attorney Pate.

¶ 43    Nowhere in the trial court's hearing on the motion for summary judgment, or in its opinion, did the court ever address the bauxite or alumina dusts claims of the complaint, or make a separate analysis and finding that the discovery rule tolling expired as to the bauxite and alumina dust claims, although it found that "[t]he term "pneumonoconiosis" describes a group of interstitial lung diseases, including asbestosis and mixed dust pneumoconiosis." *See* 2022 VI Super 97 ¶ 3e; *see also* n. 2 *supra*. The court granted summary judgment as to the asbestos claims yet dismissed the entire complaint, including the bauxite and alumina dust claims, with prejudice. In its opinion, the Superior Court noted that "upon receipt of Dr. John's February 28, 2019 Report, Plaintiff or counsel could have easily connected his injury to asbestos exposure at the refinery where he worked," with no mention of other toxic substance exposure, such as bauxite or alumina dusts. As

outlined previously, Dr. John's 2019 report did not provide Burt with notice of injuries from bauxite and alumina dust exposure. Notably, Burt did not discuss his work history at the Alumina Plant until his initial meeting with Attorney Pate on July 21, 2019. In response to a question about employment with the Hess Refinery, Burt sent back a form to Attorney Pate stating that he had worked at the Hess Refinery for seven years. The form did not ask about employment with the Alumina Plant except to state at the bottom: "If you did not work at the HESS/HOVIC refinery, but instead worked at the Alumina Plant, then we have confused your information," and directed him to call to make sure that he is placed in the Alumina Plant Group. Burt did in fact work at the Hess Refinery and did not follow up to inform Attorney Pate's office that he had also worked at the Alumina Plant. This creates a genuine issue of material fact as bauxite dusts were present at the Alumina Plant but not at the Hess Refinery. Thus, the exposure to bauxite and alumina dust and its resulting injuries were likely not known until the work history conversation with Attorney Pate on July 21, 2019, at the earliest. After meeting with Burt on July 6, 2022 and performing a physical examination, Dr. John issued an expert report concluding that Burt "had an extensive industrial history of asbestos, bauxite, and alumina dust exposure during his work at the Alumina plant." Based on that exposure, Dr. John concluded that Burt "has evidence of bilateral parenchymal fibrosis diagnostic of mixed dust pneumoconiosis [MDP] to include asbestosis." (J.A. 252.) Dr. John's 2022 report was part of the summary judgment record. At a very minimum, there is a question of material fact as to when Burt had knowledge of his separate bauxite and alumina dust related injuries, i.e., mixed dust pneumoconiosis, much less the cause of that injury before July 21, 2019, which would preclude the granting of summary judgment as to those claims of the complaint. Thus, in dismissing the entire complaint with prejudice without any consideration or findings on the bauxite and alumina dust claims, the Superior Court erred. *See*

*Wilson v. Johns-Manville Sales Corp*., 684 F.2d 111, 120-21 (DC Cir. 1982) (holding that the diagnosis of "mild asbestosis" at an earlier date did not start the clock on the right to sue for a later manifested separate and distinct disease, mesothelioma, attributable to the same asbestos exposure). Therefore, we reverse the Superior Court's judgment completely dismissing all of claims of the complaint with prejudice and remand the case for reinstatement of Burt's bauxite and alumina dust-related claims. The judgment is affirmed as to the dismissal of Burt's asbestos-related claims.[14]

## III. CONCLUSION

¶ 44    The Superior Court correctly determined that the discovery rule as articulated in *Santiago* and *Joseph* applies to toll the Virgin Islands statute of limitations. The Superior Court also correctly determined that Burt knew of his injury (asbestosis) and knew or reasonably should have known of the cause of the injury (exposure to asbestos) by no later than March 18, 2019. Thus, based on the undisputed evidence in the record we affirm the Superior Court's holding that Burt's asbestos-related claims against Lockheed were barred by the two-year statute of limitations and affirm the Superior Court's order granting Lockheed Martin's motion for summary judgment as to the asbestos claims. However, Burt also set forth in his complaint several claims for injuries caused by exposure to bauxite and alumina dusts. As the Superior Court failed to make any findings as to the applicability of the tolling provisions of the discovery rule to those claims in its December 6, 2022 opinion and order, the judgment is reversed as to the dismissal of the bauxite

---

[14] In its brief, Lockheed requests if the summary judgment is reversed that we order a bifurcated trial on the statute of limitations defense prior to a trial on the merits. We decline to do so. Lockheed is free to raise any such motion before the trial court on remand.

and alumina dust injury claims and is remanded to the Superior Court for reinstatement of the

complaint as to Burt's bauxite and alumina dust-related claims.

**Dated this 19th day of November, 2024.**

BY THE COURT:

_/s/ Rhys s. Hodge_____
**RHYS S. HODGE**
**Chief Justice**

**ATTEST:**

**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:** _____/s/ Reisha Corneiro_____
   **Deputy Clerk**

**Dated**: ___November 19, 2024_____