IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

September 04, 2025 01:40 PM
SCT-Civ-2021-0034
**DALILA E. PATTON, ESQUIRE**
**ACTING CLERK OF THE COURT**

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

GERALD ROY and ROY DEVELOPMENT, LLC

    Appellant/Plaintiff,

v.

BANCO POPULAR de PUERTO RICO,

    Appellee/Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

S. Ct. Civ. No. 2021-0034
Re: Super. Ct. Misc. No. ST-2014-CV-00306

On Appeal from the Superior Court of the Virgin Islands
Division of St. Thomas & St. John
Superior Court Judge: Hon. Kathleen Mackay

Argued: March 8, 2022
Filed: September 4, 2025

Cite as: 2025 VI 19

BEFORE:     **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Rosh D. Alger, Esq.**
Alger Law Office
St. Thomas, U.S.V.I.
    *Attorney for Appellant,*

**Alex M. Moskowitz, Esq.**
Dudley Newman Feuerzeig LLP
St. Thomas, U.S.V.I.
    *Attorney for Appellee.*

*Roy, et al. v. Banco Popular de P.R.*          2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 2 of 23

## OPINION OF THE COURT

**CABRET, Associate Justice.**

¶1      Gerald Roy ("Roy") and Roy Development, LLC ("RD") appeal the Superior Court's

August 29, 2018, order granting summary judgment in favor of Appellee Banco Popular de Puerto

Rico ("BPPR") on the breach of contract and promissory estoppel claims of Roy and RD.[1] For the

following reasons, this Court affirms the Superior Court's August 29, 2018 order.

### I.      FACTUAL AND PROCEDURAL BACKGROUND

¶2      On May 12, 2008, BPPR issued a commercial loan commitment letter (the "Commitment

Letter") to RD in the amount of $4,000,000.[2] The Commitment Letter was addressed to Gerald

Roy, as Managing Member of RD, and executed by Terryl Diggs de Jongh ("de Jongh"), as

Assistant Vice President and Commercial Relationship Officer for BPPR. On May 15, 2008, Roy

signed the Commitment Letter in his capacity as the managing member and president of RD. RD

was named as the "borrower" and only RD was to receive the loan proceeds. The Commitment

Letter required RD to pay a "non-refundable Commitment Fee" of $80,000.00 upon acceptance of

the loan. The Commitment Letter also required the closing to take place on or before June 30,

2008. BPPR was not obligated to distribute the loan proceeds until RD paid the Commitment Fee

and closed on the loan. The Commitment Letter specifically stated:

> We are pleased to advise you that Banco Popular de Puerto Rico (the "Bank") has
> approved your requested credit accommodation under normal banking terms and
> conditions hereinafter provided in the amount of Four Million and 00/100 Dollars
> ($4,000,000) (the "Facility"), to Roy Development, LLC (the "Borrower"). It must
> be understood however, that this commitment is for a limited duration and even if

---

[1] This decision is reported at *Roy v. Banco Popular de Puerto Rico*, No. ST-14-CV-306, 2018 WL 4178704 (Super. Ct. Aug. 29, 2018). Although the Superior Court concomitantly denied Roy and RD's cross-motion for summary judgment, Roy and RD do not appeal that ruling.

[2] BPPR issued two identical commitment letters to RD. The first is dated March 6, 2008, and the second letter is dated May 12, 2008. Only the second letter is the subject of this appeal.

*Roy, et al. v. Banco Popular de P.R.*    2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 3 of 23

the Bank's commitment is timely accepted by the Borrower as provided for herein, should a closing NOT occur on or before June 30, 2008, unless extended in writing by the Bank, TIME BEING OF THE ESSENCE, the Bank thereafter shall have no obligation to provide the financing outlined herein. . . .

(the "BPPR Loan Agreement").

¶3    According to Roy, in 2005, three years prior to the BPPR Loan Agreement, de Jongh asked Roy to lend her money for a personal matter, and RD lent de Jongh $33,846.93 to purchase a parcel of land. This was a personal loan from Roy to de Jongh and completely unrelated to RD's 2008 loan agreement with BPPR. However, Roy attested that de Jongh promised to fund $30,000 of the $80,000 Commitment Fee at or before the closing date set in the BPPR Loan Agreement to repay her personal debt to Roy. With this arrangement in mind, RD paid its $50,000 portion of the Commitment Fee. The payment was made by RD on a company issued check, not by Roy personally. De Jongh failed to pay either RD or BPPR the remaining $30,000 of the Commitment Fee by the June 30, 2008 closing date. Thus, the full $80,000 Commitment Fee was not paid, the loan was not closed, and BPPR refused to issue the loan proceeds. As a result, Roy claims "[t]he Bank's breach of the loan agreement caused [him] to lose all of [his] assets valued...at $6,932,400."

¶4    On June 13, 2014, Roy and RD filed a two-count complaint against BPPR and de Jongh, alleging breach of contract and promissory estoppel. On April 26, 2017, BPPR filed a Motion for Summary Judgment, arguing that: (1) Roy lacked standing to pursue individual claims against BPPR because he was not a party to the BPPR Loan Agreement and shareholders cannot sue for injuries to a corporation; (2) RD's breach of contract claim must fail because it did not pay the Commitment Fee or close on the loan by June 30, 2008; and (3) RD's promissory estoppel claim

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 4 of 23

2025 VI 19

must fail because a contract existed between RD and BPPR.[3] On May 30, 2017, Roy and RD filed a response to BPPR's motion, maintaining that: (1) Roy had standing to bring claims against BPPR because he was the sole managing member of a limited liability company ("LLC"); (2) RD should be allowed to cure any deficiency regarding its franchise taxes; (3) RD's breach of contract claim was not barred because neither its failure to pay the Commitment Fee or close by a date certain were required to create an enforceable contract; and (4) no contract existed regarding de Jongh's purported promise to pay a $30,000 of the Commitment Fee which would preclude RD's promissory estoppel claim.[4]

¶5     On August 29, 2018, the Superior Court granted BPPR's Motion for Summary Judgment and denied Roy and RD's cross motion.[5] The Superior Court found that Roy lacked standing to bring claims in his individual capacity under the well-established shareholder standing rule, which bars shareholders from filing lawsuits as individuals for injuries derived from the corporation. The Superior Court also found that RD's failure to pay the Commitment Fee by June 30, 2008, discharged BPPR's obligation to fund the loan and de Jongh's promise to fund a portion of the commitment fee had "no effect on BPPR and RD's obligations vis à vis each other under the commitment letter." On August 3, 2021, the Superior Court entered default judgment against de Jongh in the amount of $33,846.93. Roy and RD filed a timely appeal on August 31, 2021.

---

[3] Roy and RD's also argued that under 13 V.I.C. § 533(a), RD was barred from pursuing any claims because it had failed to pay its annual franchise tax since 2009. However, this argument was not appealed and will not be discussed.
[4] Roy and RD filed their own motion for summary judgment simultaneously with their response to BPPR's motion, asserting that the facts show that a valid contract existed between RD and BPPR that was breached by BPPR, and that, because Roy and RD relied upon de Jongh's promise to pay a portion of the Commitment Fee, they were entitled to relief on their promissory estoppel claim.
[5] In the same August 29, 2018 Order granting BPPR summary judgment, the Superior Court reserved ruling on Roy and RD's claims against de Jongh because she had not appeared in this action and Roy and RD had not moved for an entry of default.

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 5 of 23

2025 VI 19

## II.   JURISDICTION AND STANDARD OF REVIEW

¶6      Pursuant to the Revised Organic Act of 1954, this Court has appellate jurisdiction over "all appeals from the decisions of the courts of the Virgin Islands established by local law[.]" 48 U.S.C. § 1613a(d). Title 4, section 32(a) of the Virgin Islands Code vests this Court with jurisdiction over "all appeals arising from final judgments, final decrees, [and] final orders of the Superior Court." 4 V.I.C. § 32(a). A final order conclusively adjudicates all disputes between the parties, ends the litigation on the merits, and leaves nothing to do but execute the judgment. *Brathwaite v. Xavier*, 71 V.I. 1089, 1095 (V.I. 2019). Once a final order is issued, the parties have 30 days to file a notice of appeal. V.I. R. APP. P. 5(a)(1). The Superior Court's order giving rise to this appeal was entered on August 29, 2018; however, that same order failed to resolve any of Roy and RD's claims against de Jongh. For that reason, the August 29, 2018, order did not adjudicate all disputes between the parties and is not considered a final order within the meaning of 4 V.I.C. § 32. All disputes between the parties were finally resolved on August 3, 2021, when the Superior Court entered a default judgment against de Jongh. Because Roy and RD filed their notice of appeal on August 31, 2021, within 30 days of the entry of default judgment, this appeal is timely.

¶7      "This Court's review of decisions granting or denying motions for summary judgment is plenary." *Kennedy Funding, Inc. v. GB Properties, Ltd.*, 73 V.I. 425, 430 (V.I. 2020) (citing *Joseph v. Daily News Publishing Company, Inc.*, 57 V.I. 566, 581 (V.I. 2012) (citations omitted)). "[W]hen reviewing an order granting summary judgment, we apply the same test the Superior Court applies." *Miller v. V.I. Wheel Estates, LLC*, 75 V.I. 331, 336 (V.I. 2021) (citing *Kennedy Funding, Inc.*, 73 V.I. at 430).

¶8      Rule 56 of the Virgin Islands Rules of Civil Procedure provides, in relevant part: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

*Roy, et al. v. Banco Popular de P.R.*      2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 6 of 23

material fact and the movant is entitled to judgment as a matter of law." V.I. R. CIV. P. 56(a). In applying this standard, we view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party and resolve all conflicting allegations in the nonmoving party's favor if supported by proper proof. *Kennedy Funding, Inc.*, 73 V.I. at 431 (citations omitted); *Aubain v. Kazi Foods of the V.I., Inc.*, 70 V.I. 943, 947 (V.I. 2019) (citing *Bertrand v. Mystic Granite & Marble, Inc.*, 63 V.I. 772, 778 (V.I. 2015)). "The burden is on the moving party to 'identify those portions of the record that demonstrate the absence of a genuine issue of material fact, at which point the burden shifts to the non-moving party to present "affirmative evidence" from which a jury might reasonably return a verdict in his favor.'" *Aubain*, 70 V.I. at 948 (quoting *Chapman v. Cornwall*, 58 V.I. 431, 436-37 (V.I. 2013) (citations omitted)). To survive a motion for summary judgment, the "non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial." *Kennedy Funding, Inc.*, 73 V.I. at 431 (citation omitted). Such evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Id.* (quoting *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001)). In evaluating the evidence, "this Court may not itself weigh the evidence and determine the truth of the competing allegations; rather, we decide only whether there is a genuine issue for trial such that a reasonable jury could return a verdict for the non-moving party." *Kennedy Funding, Inc.*, 73 V.I. at 432 (citation omitted).

## III.  DISCUSSION

### A.  Shareholder Standing Rule

*Roy, et al. v. Banco Popular de P.R.*     2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 7 of 23

¶9     The first issue on appeal is whether Roy, in his individual capacity, is permitted to bring claims against BPPR.[6] In deciding that Roy lacked standing to sue BPPR, the Superior Court cited the "shareholder standing rule" under which "injuries to the shareholder which are derived solely from injuries to the corporation, for instance, diminution of share price, belong to the corporation. A shareholder may only bring an action for such injuries in the form of a derivative action on behalf of the corporation." *Roy,* 2018 WL 4178704, at *6 n.23 (quoting *Rawoof v. Texor Petroleum Co.,* 521 F.3d 750, 761 (7th Cir. 2008)) (footnote omitted).[7] Applying this rule, the Superior Court found that Roy lacked standing in his personal capacity because he "was not a party to [the] [L]oan [A]greement, and suffered no injuries in his individual capacity distinct from those suffered by RD." *Roy,* 2018 WL 4178704, at *7.

¶10     Roy assigns error to the Superior Court's finding that he suffered no personal injuries distinct from RD's. He insists that he falls within the exception to the rule, which, as noted by the Superior Court, "allows a shareholder with a direct, personal interest in a cause of action, independent of their status as a shareholder, to sue even if the corporation's rights are also implicated." *Id.* at *6 (citing *Franchise Tax Bd. v. Alcan Aluminum, Ltd.,* 493 U.S. 331, 336-37

---

[6] It is important to remember here that " 'standing' — as that concept is understood in federal constitutional law — does not exist in any form in Virgin Islands courts." *United Corporation v. Hamed,* 64 V.I. 297, 304 (V.I. 2016). Thus, in the Virgin Islands courts, standing does "not involve the Superior Court's subject-matter jurisdiction, but instead [goes] to whether the party bringing suit had a right to the relief it was seeking. . . [going] to the merits of the cause of action – not the Superior Court's authority to hear the case in the first place." *Id.* (citation omitted).

[7] Roy attempted to argue before the Superior Court that the shareholder standing rule is inapplicable to him because RD is a limited liability company and he is the managing member, not a shareholder. However, as correctly observed by the Superior Court:

> [A]n LLC, like a corporation, "is a legal entity distinct from its members." 13 V.I.C. § 1201. If in the corporate context, an individual may not recover for damages which are derived from an injury to the corporation because the corporation is a separate legal entity, then that principle has equal force in the context of an LLC.

*Roy,* No. ST-14-CV-306, 2018 WL 4178704 at *7.

*Roy, et al. v. Banco Popular de P.R.*      2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 8 of 23

(1990)). He maintains that the Bank's alleged breach of the Loan Agreement caused personal losses to him in the amount of nearly $7 million. However, Roy does not explain or demonstrate how he calculated those losses and how they are independent from his status as a member of RD. To survive summary judgment, Roy may not rest upon mere allegations but must provide "more than a scintilla of evidence" to show a genuine issue of material fact. *Kennedy Funding, Inc.*, 73 V.I. at 431 (citations omitted). In this matter, Roy fails to do so. Thus, we find that the Superior Court did not err when it employed the shareholder standing rule and determined that Roy did not fall within the exception to it.[8]

¶11    In the absence of any local law to the contrary or binding precedent, we have directed the Superior Court to conduct the three-part analysis outlined in *Banks v. Int't Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011). *See, e.g., King v. Appleton*, 61 V.I. 339, 349 (V.I. 2014). "'Under *Banks*, we consider (1) the common law rule this jurisdiction has applied in the past; (2) the majority rule adopted in other jurisdictions; and most importantly (3) the soundest rule of law for the Virgin Islands.'" *Turnbull-Wheatley v. Turnbull*, 2024 V.I. 24, ¶17 (quoting *Wilkinson v. Wilkinson*, 70 V.I. 901, 907 (V.I. 2019)). In the matter at bar, the Superior Court acknowledged that it was "unable to find any V.I. case law that adopts the rule or addressed whether an LLC

---

[8] Traditionally, courts acknowledge an exception to the shareholder standing rule, where a "shareholder with a direct, personal interest in a cause of action [may] bring suit even if the corporation's rights are also implicated." *Franchise Tax Bd.*, 493 U.S. at 336. Some jurisdictions recognize a second exception "where 'the shareholder can show that the wrongdoer owed him a special duty . . . '" *McClain v. Causey*, No. 1:20-CV-695, 2021 WL 111496, at *9 (M.D.N.C. Jan. 12, 2021) (quoting *Barger v. McCoy Hillard & Parks*, 488 S.E. 2d 215, 219 (N.C. 1997)); *see also, e.g., Kim v. Friedman*, 2019 WL 2267285 at *14 (Wash. App. Div. 1, 2019)). It goes without saying that shareholders are allowed to file derivative actions on behalf of the corporation. Derivative actions allow a shareholder to bring a lawsuit on behalf of the corporation for injuries sustained by the corporation itself, *PricewaterhouseCoopers, LLP v. Massey*, 860 N.E.2d 1252, 1257 (Ind. Ct. App. 2007). Roy does not argue on appeal that his claim is a derivative action.

*Roy, et al. v. Banco Popular de P.R.*  2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 9 of 23

member may sue for injuries to the LLC . . . .", yet, despite referencing *Banks*, the Superior Court

failed to set forth all three distinct factors of a *Banks* analysis, simply concluding:

> Given the widespread application of the rules, and their basis in the fundamental principle
> that a corporation or LLC is a separate legal entity, the Court adopts the shareholder
> standing rule: (1) a shareholder, director, officer, or employee of a corporation may not sue
> or recover for damages to an individual which are derived from an injury to the corporation;
> (2) an individual member or shareholder of an LLC may not sue or recover damages to the
> individual that are derived from an injury to the LLC; and (3) the exception to this rule is
> if the individual has a direct, personal interest in the cause of action independent of their
> status as a shareholder, member, director, officer, or employee of the corporation or LLC.

*Roy*, 2018 WL 4178704, at *7 n.14 (citations omitted). Consequently, we will undertake a proper

*Banks* analysis here.

¶12     As noted *supra*, the Superior Court stated that "no V.I. court has previously adopted the

shareholder standing rule . . . ." *Id.* However, both recently and prior to our holding in *Banks*, the

District Court of the Virgin Islands applied a form of the shareholder standing rule, even though it

may not have called it that. *See, e.g., Oelsner v. V.I. Dep't of Prop. and Procurement*, No. CV

2014-62, 2024 WL 3014982, at *18 n.22 (D.V.I. Mar. 5, 2024) ("In the context of harm to a

corporation, the third-party standing doctrine 'has given rise to the "so-called shareholder

standing rule," which is 'a "longstanding equitable restriction that generally prohibits shareholders

from initiating actions to enforce the rights of the corporation unless the corporation's management

has refused to pursue the same action for reasons other than good-faith business judgment."'"")

(citation omitted)); *Malpere v. Ruyter Bay Land Partners, LLC*, No. CIV. 2003-132, 2004 WL

3267278, at *8-9 (D.V.I. Dec. 22, 2004) ("Defendants contend that plaintiffs, as shareholders and

members, cannot bring a cause of action on behalf of SBHOA. Plaintiff's complaint alleges that

RBLP owes the SBHOA $ 509,549 plus interest and also seeks punitive damages. These claims,

if proven, would inure to the benefit of the SBHOA. I therefore agree with defendants that

*Roy, et al. v. Banco Popular de P.R.*     2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 10 of 23

plaintiffs do not have standing to bring their claims on behalf of the SBHOA, because the claims are derivative of its rights. The law is unambiguous on this issue.") (citation omitted)); *Pemberton Sales & Serv. v. Banco Popular de P.R.*, 877 F. Supp. 961, 965 (D.V.I. 1994) (where the court declares, "A stockholder, director, officer, or employee of a corporation may not recover for damages to an individual which are derived from an injury to the corporation" (footnote omitted).

¶13     It is clear that the majority of jurisdictions have adopted the rule. Indeed, the Supreme Court of the United States has defined the shareholder standing rule as "a long-standing equitable restriction that generally prohibits shareholders from initiating actions to enforce the rights of the corporation." *Franchise Tax Bd.*, 493 U.S. at 336. Moreover, numerous courts recognize the well-established principle of corporate law that "[a] stockholder may not bring an action in his own name to recover for wrongs done to the corporation." *Wells Fargo Ag Credit Corp. v. Batterman*, 424 N.W.2d 870, 873 (Neb. 1988); *see also, e.g., Nicholson v. Ash*, 800 P. 2d 1352, 1357 (Colo. App. 1990) ("A stockholder may maintain a personal action in his capacity as a stockholder only if the actions of the third party that injure the corporation result from a violation of a duty owed to him as a stockholder and that cause him injury as a stockholder, unique to himself and not suffered by the other stockholders."); *Kling Meats, Inc. v. Baltimore Spice Co.*, No. 84-OC-19, 1988 WL 15403, at *4 (Del. Super. Ct. Jan. 26, 1988) ("A shareholder in a corporation may not assert an individual cause of action in his individual capacity for harms suffered as a consequence of his shareholder relationship with the corporation.") (citing *Adair v. Wozniak*, 492 N.E. 2d 426 (Ohio 1986)); *Wells Fargo Ag Credit Corp.*, 424 N.W.2d at 870 ("A stockholder may not bring an action in his own name to recover for wrongs done to the corporation or its property. Such a cause of action is in the corporation and not the stockholders." (quoting *Ruplinger v. Ruplinger*, 48 N.W.2d 73, 75 (Neb. 1951)); *Adair*, 492 N.E.2d at 428 ("It is well-settled that only a corporation and not

*Roy, et al. v. Banco Popular de P.R.*        2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 11 of 23

its shareholders can complain of an injury sustained by, or a wrong done to, the corporation.").[9]

Moreover, courts apply the shareholder standing rule to both corporations and LLCs because an

LLC, like a traditional corporation, "is an entity distinct from its members." 13 V.I.C. § 1201;

*Martin v. Santorini Capital, LLC*, 236 A.3d 386, 394 (D.C. 2020) (quoting the analogous D.C.

statute); *In re LoneStar Logo & Signs, LLC*, 552 S.W.3d 342, 347 (Tex. Ct. App. 2018). Similar

to corporate shareholders, "LLC members are prohibited from initiating actions to enforce the

rights of the corporation . . . ." *Martin*, 236 A.3d at 394.

¶14      Having determined that the shareholder standing rule has been applied in the Virgin Islands

without disapproval and that the rule has been nearly universally applied in other jurisdictions, we

now turn to the third and final step of the *Banks* analysis and determine whether the rule that is the

soundest for the Virgin Islands. *Robertson v. Banco Popular de Puerto Rico*, 77 V.I. 574, 596 (V.I.

2023). "In analyzing this factor, it is important to consider not just the practicability of the doctrine,

but also what purpose it serves." *Id.* "Unless public policy compels another result, the majority

rule is generally presumed to be the soundest." *Matthew v. Herman*, 56 V.I. 674, 680 (2012) ("[In

general] the Virgin Islands Legislature intends [the] majority rule to govern in the absence of

specific legislation." (quoting *Banks*, 55 V.I. at 983-84)). As stated above, the shareholder standing

rule has been a longstanding equitable restriction that aims to avoid duplicative lawsuits and ensure

that the management of corporations controls the litigation decisions rather than the shareholders.

---

[9] A few more recent cases include: *Bankers Tr. Co. v. Rhoades*, 859 F.2d 1096, 1101 (2d Cir. 1988) ("An action to redress injuries to a corporation cannot be maintained by a shareholder in his own name."); *Knauf Fiber Glass, GmbH v. Stein*, 622 N.E.2d 163, 165 (Ind. 1993) ("[A] shareholder may not maintain an action in his or her own name to redress an injury to the corporation (citations omitted)); (citations omitted)); *Danielewicz v. Arnold*, 769 A.2d 274, 283 (Md. Ct. Spec. App. 2001) ("It is a general rule that an action at law to recover damages for an injury to a corporation can be brought only in the name of the corporation itself acting through its directors, and not by an individual stockholder...."); *Woods View II, LLC v. Kitsap Cty.*, 352 P.3d 807, 818 (Wash. Ct. App. 2015) ("Shareholders are usually not allowed to bring an individual direct cause of action for an injury inflicted on the corporation or its property by a third party." (citations omitted)).

*Roy, et al. v. Banco Popular de P.R.*　　　　2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 12 of 23

*See Franchise Tax Bd.*, 493 U.S. at 336. This rule, along with the exceptions for derivative and direct actions, has long been recognized by a majority of jurisdictions. *See Wells Fargo Ag Credit Corp*, 424 N.W.2d at 873 (Neb. 1988); *see also Adair*, 492 N.E.2d at 428; *see also Dinuro Invs., LLC*, 141 So. 3d at 735; *see also Woods View II, LLC*, 352 P.3d at 818; *see also Pricewaterhouse Coopers, LLP*, 860 N.E.2d at 1260; *see also Shenker*, 411 Md. at 346; *see also DLB Collection Trust*, 893 P.2d 593, 596 (Utah Ct. App. 1995). Additionally, in the Virgin Islands, as in most jurisdictions, LLCs and corporations operate as entities distinct from their members; therefore, LLCs should also be subject to the shareholder standing rule and its exceptions. *See Martin*, 236 A.3d at 395; 13 V.I.C. § 1201.

¶15　For the purposes of the third *Banks* factor, adopting the shareholder standing rule and its exceptions would be consistent with Virgin Islands' public policy for the following reasons. First, the rule is consistent with the need for the Virgin Islands to protect the balance between corporations and their shareholders, while maintaining a shareholder's right to protect their separate interests. Second, the shareholder standing rule promotes judicial economy by preventing duplicative lawsuits that would burden the Virgin Islands Courts. *See Franchise Tax Bd.*, 493 U.S. at 336. Third, it is important to note that the adoption of the rule would not prevent shareholders from seeking judicial relief and therefore result in injustice, as the rule would only prevent the filing of lawsuits that are best reserved for the corporation or LLC. If a shareholder has a unique or separate injury that the corporation is unable or unwilling to file, then the direct action exception would protect their right to seek judicial relief. Therefore, because the shareholder standing rule and its exceptions are recognized by a majority of jurisdictions and do not conflict with Virgin Islands public policy, we find this to be the soundest rule for the Virgin Islands. *Matthew*, 56 V.I. at 680.

*Roy, et al. v. Banco Popular de P.R.*　　　　2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 13 of 23

¶16　The Superior Court's shareholder standing rule incorporates the common principles of these approaches and requires a claimant's injuries to be separate and distinct from the injuries of the LLC. This Court, therefore, adopts the Superior Court's shareholder standing rule modified as follows:

> Unless an individual has a direct personal interest independent of their status as a shareholder, member, director, officer, or employee of the corporation or LLC, (1) a shareholder, director, officer, or employee of a corporation may not sue or recover for damages to an individual which are derived from an injury to the corporation and (2) an individual member or shareholder of an LLC may not sue or recover damages to the individual that are derived from an injury to the LLC.

Further, because this appeal involves an LLC managing member bringing a suit for damages sustained only by the LLC itself, we apply the Superior Court's rule to the underlying circumstances.

¶17　Under this rule, Roy is unable to show a direct injury and, therefore, does not fall within the exception to the shareholder standing rule. First, Roy, as the sole managing member of RD, did not suffer any special injuries that were not derived from RD's losses. Second, BPPR did not owe Roy any contractual or fiduciary duties. And third, any monetary losses Roy may have sustained flowed or derived from RD's monetary losses. Roy was not a party to the BPPR Loan Agreement, and any money owed under that agreement belonged exclusively to RD. Thus, RD was the only party that suffered direct harm when the loan proceeds were not distributed. Consequently, Roy's injuries relate to and derive from RD's injuries. There is no evidence to suggest that Roy would have suffered injuries had RD not suffered injuries. In other words, Roy lost money because RD lost money. There is also no evidence on the record showing that Roy lost money in his individual capacity. The $50,000 paid towards the Commitment Fee was issued on a company check, meaning Roy's personal funds were not used. Additionally, Roy has not produced

*Roy, et al. v. Banco Popular de P.R.*    2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 14 of 23

any evidence that he lost "all of his assets" beyond making a general allegation that he lost approximately $7,000,000. As the sole managing member of RD, Roy necessarily sustains a loss when RD loses money; however, Roy's harm was indirect and resulted from the harm to RD. Accordingly, we affirm the Superior Court's finding that Roy, in his personal capacity, may not pursue claims against BPPR regarding the BPPR Loan Agreement.

## B. Promissory Estoppel

¶18    Roy also argues that the Superior Court erred in failing to address his promissory estoppel claim. In its opinion, the Superior Court first notes that "[the] Plaintiffs complaint originally stated a claim of promissory estoppel against both Banco and de Jongh." *Roy*, 2018 WL 4178704, at *22-23. But then proceeds to grant summary judgment in favor of BPPR on only RD's promissory estoppel claim because "a contract existed between RD and the Bank...." *Id.* at *23. Thus, Roy argues on appeal that the "trial court provided no basis for dismissing the promissory estoppel claim asserted" by Roy.

¶19    In *Mosler v. Gerace*, this Court recognized a promissory estoppel cause of action in the Virgin Islands, comprised of the "following three elements: (1) the promisor made a promise that he should have reasonably expected to induce action; (2) the promisee took action in reliance on the promise; and (3) injustice can be avoided only be enforcing the promise." 78 V.I. 649, 670-71 (V.I. 2024) (citing *Whitaker v. Martin*, No. CV 2020-24, 2020 WL 7481783, at *4 (D.V.I. Dec. 18, 2020) and RESTATEMENT (SECOND) OF CONTRACTS § 90 (internal quotation marks omitted)).[10]

---

[10] In *Mosler*, we also drew a distinction between an *agreement* and a *contract*, concluding that the terms "'agreement" and "contract" are not synonyms, in that an agreement is a broader term than a contract. An agreement is "a coming together of parties in an opinion or determination, the union of two or more minds in a thing done or to be done." *See Gaskins*, 245 S.E.2d at 600. In contrast, a contract requires more than simply agreeing to do something: "a contract is created only when parties mutually assent to specific terms" in which there is "an offer and an acceptance" in which "the offer and acceptance must mirror each other in order for a contract to be legally formed." *Toussaint*, 67 V.I. at 951-52 (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 17, 22, 24, 35, 36, 38, 39). *Mosler*, 78 V.I. at 665.

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 15 of 23

2025 VI 19

¶20    In the matter at bar, BPPR was a "promisor" only to RD, and not to Roy under the BPPR Loan Agreement. De Jongh was the only party that allegedly made any promise to Roy. Despite the fact that de Jongh was the BPPR employee who signed the Commitment Letter sent to RD, the alleged promise to Roy to pay part of the Commitment Fee was made in her personal capacity and outside of the BPPR Loan Agreement. Although Roy may have a valid promissory estoppel claim against de Jongh, there is no evidence on the record that BPPR was involved in the de Jongh Agreement. In fact, Roy concedes that the arrangement with de Jongh involved an "unrelated matter." Further, Roy never argued at any point during litigation that de Jongh had the authority to make these promises on BPPR's behalf, nor did he produce any evidence to support that contention. Roy knew de Jongh's promise was to resolve her own personal debt, as reflected in Roy's affidavit in support of his motion for summary judgment, and there was no reason for him to believe BPPR was involved in this arrangement.

¶21    Nonetheless, even if this Court were to assume that BPPR was the promisor, Roy's promissory estoppel claim would still fail because an "express written agreement governing the same subject matter," namely, the BPPR Loan Agreement, existed. *See Williams v. Inter-Ocean Ins. Agency*, 2020 VI Super 89U, ¶35 (quoting *Orthovita, Inc. v. Erbe*, 2008 WL 423446, at *14 (E.D. Pa. 2008) ("Logically, a promissory estoppel claim can proceed only where a contract is absent. If the court finds that a contract exists, the promissory estoppel claim must fail. When parties have formed an enforceable contract, relief under a promissory estoppel claim is unwarranted.")); *see also, e.g., Banco Popular de P.R. v. Panzer*, No. ST-2015-CV-00056, 2021 WL 3355327, at *6 (V.I. Super. June 23, 2021) ("A party may not recover under a theory of promissory estoppel when it is established, either by admission or judicial finding, that a contract existed." (footnote omitted)); *Forever Flowers Grande v. Yacht Haven Grande*, No. ST-09-CV-

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 16 of 23

2025 VI 19

339, 2011 WL 13389571, at *5 (V.I. Super. Aug. 11, 2011) ("Although promissory estoppel may be pled as an alternative to a claim for breach of contract, the finding of a valid contract prevents a party from recovering under this quasi-legal theory." (citations omitted)); *Kump v. State Farm Fire & Cas. Co.*, No. 3:12-CV-72, 2012 WL 1123897, at *3 (M.D. Pa. Apr. 3, 2012) ("[W]here an enforceable contract exists, courts have found that applying the doctrine of promissory estoppel would be inappropriate." (citation omitted)), *cited in Atul K. Amin Family, L.P. v. Steward Easton Hosp., Inc.*, No. 5:20-CV-04161-JMG, 2021 WL 2012509, at *5 (E.D. Pa. May 19, 2021). Further, as the court in *BSD Management v. Rozen* declared, "This rule applies even where the party claiming promissory estoppel is not a party to the contract." No. 22-11763, 2024 WL 710612, at *5 (E.D. Mich. Feb. 21, 2024).

¶22    Because the BPPR Loan Agreement is a valid contract and because the disbursement of funds under that agreement is the subject of the underlying litigation, Roy cannot succeed on a promissory estoppel claim. Accordingly, BPPR Roy would not be able to satisfy the first element of his promissory estoppel claim. Therefore, we affirm the Superior Court's grant of summary judgment in favor of BPPR on this claim.

### C. Breach of Contract

¶23    Roy and RD argue that the Superior Court erred in granting summary judgment in favor of BPPR on their breach of contract claims because there are disputed issues of fact regarding the agreement between Roy and de Jongh. Specifically, Roy and RD assert that facts in the record show that de Jongh, acting as an executive employee of BPPR, "made collateral promises that countered those in the Commitment Letter," suggesting that BPPR is bound by de Jongh's promise to pay a portion of the Commitment Fee. Responding to this argument, BPPR asserts that the Superior Court was correct in finding that Roy's agreement with de Jongh had no impact on

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 17 of 23

2025 VI 19

BPPR's duty to perform under the BPPR Loan Agreement. BPPR argues that it was never involved in the transaction between RD and de Jongh, and because Roy has failed to allege any agency or authority principles between BPPR and de Jongh, any breach of contract claim against BPPR necessarily fails. Accordingly, BPPR also argues that summary judgment was indeed proper because there are no disputes regarding the fact that RD failed to pay the Commitment Fee, which discharged BPPR's duty to fund the loan. We affirm the Superior Court's grant of summary judgment in favor of BPPR on this claim.

¶24     As recited *supra*, to survive a motion for summary judgment, "[t]he burden is on the moving party to 'identify those portions of the record that demonstrate the absence of a genuine issue of material fact, at which point the burden shifts to the non-moving party to present "affirmative evidence" from which a jury might reasonably return a verdict in his favor.'" *Aubain*, 70 V.I. at 948 (quoting *Chapman v. Cornwall*, 58 V.I. 431, 436-37 (V.I. 2013) (citations omitted)). Moreover, the "non-moving party may not rest upon mere allegations but must present actual evidence showing a genuine issue for trial." *Kennedy Funding, Inc.*, 73 V.I. at 431 (citation omitted).

¶25     Here, the Superior Court granted summary judgment to BPPR after first finding that Roy could not pursue any claims individually against BPPR predicated upon the BPPR Loan Agreement and then finding that RD failed to prove that BPPR had a duty to perform under the BPPR Loan Agreement. We have adopted the shareholder standing rule herein; thus, the Superior Court was correct in ruling in favor of BPPR on any breach of contract claim asserted by Roy.

¶26     Regarding RD's breach of contract claim, the Superior Court concluded that BPPR had no duty to perform under the BPPR Loan Agreement because RD failed to satisfy the condition that it pay the $80,000 Commitment Fee before BPPR was obligated to perform under the Loan

*Roy, et al. v. Banco Popular de P.R.*　　　　2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 18 of 23

Agreement. *Roy*, 2018 WL 4178704, at *11.[11] As we have declared, to establish a breach of contract claim in the Virgin Islands, a plaintiff must "demonstrate: (1) an agreement; (2) a duty created by that agreement; (3) a breach of that duty; and (4) damages." *Phillip v. Marsh-Monsanto*, 66 V.I. 612, 621 (V.I. 2017) (citations omitted). This Court first looks to the plain meaning of a contract when determining the duties that the contract created and whether those duties were breached. *Id.* at 625. "Where the language of a contract is clear and unambiguous, the parties' intent must be derived from the plain meaning of its terms." *Id.* at 625-26. On the other hand, if contract terms are ambiguous, the court may consider extrinsic evidence to determine the parties' intent. *Id.* at 624.

¶27　In some instances, contracts specify a condition or event that "must occur, unless its non-occurrence is excused, before performance under a contract becomes due." RESTATEMENT (SECOND) OF CONTRACTS § 224. Section 224 of the Restatement (Second) of Contracts provides that "a condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due." *See Bank of Nova Scotia v. Herman*, No. ST-10-CV-270, 2016 WL 3007489, at *4 & n.14 (V.I. Super. Ct. May 13, 2016) (where the court conducts a *Banks* analysis and finds that the Restatement (Second) of Contracts § 224 represents the soundest rule for the Virgin Islands and is in accord with local public policy); *see also Storage On Site, LLC v. Slodden*, 57 V.I. 94, 101 n.25 (Super. Ct. 2012) (where the "[c]ourt notes that the Second Restatement of Contracts no longer recommends the use of the terminology 'condition subsequent' or 'condition precedent,' instead preferring the term 'condition of the

---

[11] In an earlier ruling, the Superior Court determined that a contract had been formed between the parties upon RD's return of the executed Commitment Letter. *Roy v. Banco Popular De Puerto Rico*, No. ST-14-CV-306, 2017 WL 11596640 (V.I. Super. Mar. 28, 2017).

*Roy, et al. v. Banco Popular de P.R.*                    2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 19 of 23

duty.' (citing RESTATEMENT (SECOND) OF CONTRACTS § 224)). There are no specific terms or phrases that must be used to create a condition of the duty, however, "such words and phrases as 'if' and 'provided that,' are commonly used to indicate that performance has expressly been made conditional . . . as have the words 'when,' 'after,' 'as soon as,' or 'subject to.'" *Chirichella v. Erwin*, 310 A.2d 555, 557 (Md. 1973). Having reviewed the *Banks* analysis of the *Herman* court regarding Section 224 of the Restatement (Second) of Contracts and finding that it provides a simple definition of a condition of the duty utilized by a majority of jurisdictions and because the definition facilitates the fulfillment of an agreement and safeguards against issues with the contract in the future, this Court adopts the Restatement (Second) of Contracts § 224 definition.

¶28     Further, in the underlying matter, the Superior Court conducted a *Banks* analysis to adopt the Second Restatement's standards of preference with regard to conditions as set forth in Section 227. *Roy*, 2018 WL 4178704, at *6 and n.23. Section 227 of the Second Restatement of Contracts provides the following guidance on interpreting and enforcing a condition of the duty:

> (1) In resolving whether an event is made a condition of an obligor's duty, and as to the nature of such event, an interpretation is preferred that will reduce the obligee's risk of forfeiture, unless the event is within the obligee's control or the circumstances indicate that he has assumed the risk.
> (2) Unless the contract is of a type under which only one party generally undertakes duties, when it is doubtful whether
> > (a) a duty is imposed on an obligee that an event occur, or
> > (b) the event is made a condition of the obligor's duty, or
> > (c) the event is made a condition of the obligor's duty and a duty is imposed     on the obligee that the event occur, the first interpretation is preferred if the event is within the obligee's control.
> (3) In case of doubt, an interpretation under which an event is a condition of an obligor's duty is preferred over an interpretation under which the non-occurrence of the event is a ground for discharge of that duty after it has become a duty to perform

RESTATEMENT (SECOND) OF CONTRACTS § 227.

*Roy, et al. v. Banco Popular de P.R.*     2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 20 of 23

¶29    Having reviewed the Superior Court's *Banks* analysis, we agree with the Superior Court that "'considering the . . . widespread application of this rule in a majority of jurisdictions . . . the fact that this rule safeguards against contract forfeitures' . . . and considering the fact that the rule accords with § 224, this Court finds that the Restatement (Second) of Contracts § 227 represents a sound rule for the Virgin Islands and adopts it here." *Roy,* 2018 WL 4178704, at 14 and n.23 (quoting *Bank of Nova Scotia,* 2016 WL 300748, at \*13-14 & n.14). Thus, we hereby adopt Restatement (Second) of Contracts § 227 as the soundest rule for the Virgin Islands.

¶30    In employing both the definition of condition and the standards of preference with regard to conditions, we consequently adopt the following rule: A condition is a fact or event that must occur, unless otherwise excused, before a duty of performance under a contract becomes due. Therefore, the non-occurrence of a condition discharges the other party's duty of performance.

¶31    Here, in the matter at bar, the Commitment Letter's condition expressly provides that, if the closing did not take place by June 30, 2008, BPPR did not have to provide financing for the loan (unless it extended the deadline in writing). The Commitment Letter plainly and unambiguously states that (1) "[t]he loan shall be advanced under the terms . . . and subject to compliance with the conditions set forth below"; (2) "[a] non-refundable Commitment Fee of [$80,000] due and payable upon your acceptance of the Commitment"; and (3) "subject to your compliance with the conditions hereof, the closing of the Loan ('the Closing') shall take place on or before June 30, 2008."

¶32    An examination of this language shows that BPPR had a duty to distribute the loan proceeds only after RD paid the Commitment Fee and closed on the loan by June 30, 2008. The Commitment Letter's unambiguous language also means this Court may not consider extrinsic evidence to vary its meaning. *Phillip,* 66 V.I. at 625. Because we have already determined that the

*Roy, et al. v. Banco Popular de P.R.*       2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 21 of 23

de Jongh Loan Agreement had no relation to the BPPR Loan Agreement, we must consider only whether RD satisfied the condition that would then trigger BPPR's duty to distribute the loan. However, there is no dispute of fact that RD failed to pay the full Commitment Fee to timely close on the loan. Since RD failed to pay the Commitment Fee in full and did not close on the loan by June 30, 2008, the condition was not satisfied, and BPPR's duty to fund the loan was discharged. *See* RESTATEMENT (SECOND) OF CONTRACTS §§ 224, 227.

¶33    RD maintained that the failure to pay the full amount of the Commitment Fee was not its fault; rather, the failure was de Jongh's. Likewise, on appeal, Roy and RD argue that disputes of fact exist regarding de Jongh's collateral promise to pay a portion of the Commitment Fee and that the Superior Court erred in disregarding and disposing of those claims.

¶34    As an initial matter, the Superior Court reasoned that "[t]o prevail on an argument that Banco was bound by de Jongh's promise because she was acting in her official capacity, [Roy and RD] would need to show as a matter of law that the Bank was bound by apparent authority or some other principal-agent principle." (*Roy*, 2018 WL 4178704, at *9 & n.32). *Apparent authority* is defined as "[a]uthority that a third party reasonably believes an agent has, based on the third party's dealings with the principal, even though the principal did not confer or intend to confer the authority" and "can be created by law even when no actual authority has been conferred." *Apparent authority*, BLACK'S LAW DICTIONARY 162 (12th ed. 2024). In the matter at bar, the Superior Court found that, because Roy and RD "did not develop that legal argument, or allow [BPPR and de Jongh] to respond to such an argument . . . the issue is deemed waived." *Roy*, 2018 WL 4178704, at *9 & n.32 (citations omitted). Similarly, Roy and RD do not support their position upon appeal, merely declaring that they "submitted evidence that the same executive employee who signed the offer on behalf of [BPPR] agreed to terms not presented in the written agreement." Thus, in the

*Roy, et al. v. Banco Popular de P.R.*        2025 VI 19
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 22 of 23

absence of any argument, citation to the record or authority, or other evidence of disputed material facts, we also deem this issue waived. V.I. R. APP. P. 22(m)(3) ("Issues that... are only adverted to in a perfunctory manner or unsupported by argument and citation to legal authority, are deemed waived for purposes of appeal.").

¶35    But even considering the merits of Roy and RD's claim, Roy and RD have offered little to no arguments or evidence whatsoever as to how BPPR is bound to de Jongh's promise or why this promise should preclude summary judgment. RD has made no arguments and produced no evidence to suggest that de Jongh had the authority to bind BPPR to the terms of de Jongh's arrangement with Roy to pay $30,000 toward the Commitment Fee, whether that be actual and express authority, implied authority, or apparent authority. Similarly, Roy and RD offer neither arguments nor evidence that de Jongh was acting within the scope of her employment at BPPR when she made this collateral promise to Roy. If anything, the record supports the conclusion that BPPR is *not* bound to the terms of de Jongh's promise, as Roy admits in his affidavit that this arrangement was to resolve an "unrelated matter" dating back to 2005, three years before the Commitment Letter was even signed. Moreover, there is no mention of de Jongh's promise within the Commitment Letter itself, nor does the Commitment Letter state that Roy was responsible for only a portion of the Commitment Fee. Finally, there is nothing on the record that indicates BPPR was even aware of the de Jongh Agreement to begin with, let alone that BPPR agreed to its terms. Simply stating that an agreement existed between de Jongh and Roy is not enough to defeat BPPR's Motion for Summary Judgment.

## IV.   CONCLUSION

¶36    Because Roy was not a party to the loan agreement, Roy lacks standing in his individual capacity to bring claims against BPPR, and RD is the only party that holds the right to recover any

*Roy, et al. v. Banco Popular de P.R.*
S. Ct. Civ. No. 2021-0034
Opinion of the Court
Page 23 of 23

2025 VI 19

loan proceeds. However, since RD failed to pay the Commitment Fee and timely close on the loan, BPPR had no duty to issue the loan. As to Roy's promissory estoppel claim, because the Loan Agreement was a valid contract and Roy was never a party to that Loan Agreement, Roy's promissory estoppel claim cannot succeed. For these reasons, no jury could reasonably find that BPPR breached its contract with RD. Hence, this case cannot proceed to trial, and we therefore affirm the Superior Court's August 29, 2018, Order granting summary judgment to BPPR.

**Dated this 4th day of September, 2025.**

**BY THE COURT:**

**MARIA M. CABRET**
**Associate Justice**

**ATTEST:**

**DALILA E. PATTON, ESQ.**
**Acting Clerk of the Court**

By: _____
**Deputy Clerk I I**

**Dated**: September 4, 2025